## SIMMONS *v.* THE STATE.

99    699
e120   435
j120   439

The indictment being for rape, and the evidence as a whole making at best a weak and unsatisfactory case upon the question whether or not the alleged sexual intercourse took place at all, and the evidence relied on to show that it was against the will of the female upon whom the rape is charged to have been committed (even upon the assumption that such intercourse was proved) being by no means clear or conclusive, the ends of justice require another trial.

Argued October 8,—Decided October 19, 1896.

Indictment for rape. Before Judge Callaway. Richmond superior court. April term, 1896.

*Charles A. Picquet,* for plaintiff in error.  *W. H. Davis, solicitor-general,* by *Anderson, Felder & Davis,* contra.

SIMMONS, Chief Justice.

The evidence in this case makes at best a weak and unsatisfactory case upon the question whether or not the al-

leged sexual intercourse took place at all; and if it did take place as alleged, the evidence relied on to show that it was against the will of the female is by no means clear or conclusive. According to her testimony, it took place in the house of the accused, where she and her father boarded. He threw her upon a bed, and she submitted to the connection without any struggle or attempt at physical resistance. She stated that it hurt her, and she cried and told him not to do it, but did nothing further. So far as appears, it was merely because it hurt her that she cried and told him not to do it. It does not appear that she cried out in such manner as would attract the attention of other persons, or that there was any reason to suppose that if she did so she would not be heard. It appears from her testimony that before the alleged intercourse took place she prepared for it by pulling off one of her garments, as the accused had told her to do, and afterwards, the garment having been used in wiping blood from herself and from the accused, she concealed it behind the bed, at his direction. She was a young girl, and if the intercourse took place as alleged, it may have been that she yielded through fear. There was no evidence, however, that such was the case. She did not testify that there was any threat or intimidation or that she was in any degree under the influence of fear; and the conviction cannot be upheld upon a mere assumption that she was. She was of an age at which she was in law capable of consenting to the intercourse, and unless it was accomplished forcibly and against her will, the act was not rape. (Penal Code, §93.) It is not required that the female shall do more than her age, strength and the attendant circumstances make it reasonable for her to do in order to manifest her opposition; but it must appear beyond a reasonable doubt that there was actual resistance, or that resistance was prevented by violence or restrained by fear. Opposition by mere words is not enough. "Though in words she objects, if she makes

no outcry and no resistance, she by her conduct consents, and there is no rape." 2 Bishop, New Crim. Law, §1122. A "mixed" resistance or a merely equivocal submission will not do. There may be slight physical resistance even though there is a mental willingness to submit. Physical pain would naturally produce some manifestation of this kind; or it might be indicative merely of maidenly shame or coyness. As was said by Bronson, J., in the case of The People v. Hulse, 3 Hill (N. Y.), 316: "Although the woman never said yes; nay more, although she constantly said no, and kept up a decent show of resistance to the last, it may still be that she more than half consented to the ravishment. Her negative may have been so irresolute and undecided, and she may have made such a feeble fight as was calculated to encourage, rather than repel the attack." See the remarks of Lumpkin, J., on this subject, in *Jones* v. *The State*, 90 *Ga.* 625 (2), *et seq.* And see also, as to the degree of resistance required to be shown in such cases: 1 Wharton, Crim. Law, (8 ed.), §557; Clark, Crim. Law. §82, p. 185; 19 Am. & Eng. Enc. of Law, art. Rape, pp. 951, 952.

Other important facts in this case are, that the girl made no immediate complaint, that she went about as usual without any change in her walk being noticeable, and that although she testified that the sexual organ of the accused was very large—as long as her arm below the elbow, and went "clear into her body," neither she herself, nor any other witness, testified that there were any bruises or abrasions upon her person. She stated that immediately after the intercourse, the accused sent her to a woman named Epsy Faust, to get a sieve, in order to prepare her father's supper; but it does not appear that she then said anything to this woman about what had occurred, though according to her own statement the woman was "a second mother" to her and had always been very kind to her. Her first statement in regard to the matter appears to have

been made on the next day, while at this woman's house.
The latter testified that the girl was then complaining of
feeling sore,—so sore that she could not stand still; where-
upon she examined her and found some blood on her legs.
It does not appear that she had not reached the menstrual
period, or that the condition of her person was such as to
suggest that the blood had come from other than natural
causes.    It is somewhat peculiar that this witness did not
testify at all as to any examination of the girl's private
parts.    Another woman testified that on the day after that
on which the intercourse was alleged to have taken place,
she received a message from the accused requesting her to
examine the girl, which she did; and that she examined her
closely and found nothing the matter with her parts,—no
torn places and no blood.    These were the only witnesses
who testified as to any examination of the girl's person.
There was uncontradicted evidence that she had made con-
flicting statements about the matter, at one time denying
the rumor that the accused had raped her, and then stating
that he drew a gun on her and did it. . In her testimony
nothing was said about a gun.    Moreover, it is hardly
credible that the accused would immediately after the al-
leged intercourse have sent her to the woman Epsy, as she
says he did, if it had been accomplished forcibly and
against her will.    It is exceedingly improbable that a man
if he had forced a young girl to submit to such an outrage
would at once send her, in the agitated and painful condi-
tion in which she would naturally be at such a time, to a
woman to whom she would probably disclose her condition
and tell what had happened.    The accused denied having
had any intercourse with the girl at all, and it does not
appear that after it was alleged to have taken place he
said or did anything inconsistent with his innocence.    He
remained on the premises, and was there when arrested
several days after the charge was made.    Several witnesses
testified as to his good character.

Courts and juries, in cases of this kind, should be mindful of the caution of Lord Hale, that the accusation is one easily made, hard to be proved, and harder to be defended by the party accused, though never so innocent; and as has been well remarked, they "cannot well be too cautious in scrutinizing the testimony of the complaining witness, and guarding themselves against the influence of those indignant feelings which are so naturally excited by the enormity of the alleged offense. Although no unreasonable suspicion should be indulged against the accuser, and no sympathy should be felt for the accused, if guilty, there is much greater danger that injustice may be done to the defendant in cases of this kind than there is in prosecutions of any other character. The evidence, if it amounts to anything, is always direct; and whatever may be the just force of countervailing circumstances, honest and unsuspecting jurors may think themselves bound of necessity to credit that which is positively sworn." For this reason it is held that in such cases the testimony of the person alleged to have been raped should always be scrutinized with care, and when there is much in the facts and circumstances in evidence to discredit her testimony, it should be deemed insufficient to sustain a verdict of guilty; and hence it is that courts of review, while generally reluctant to disturb a verdict where there is any evidence to support it, frequently set aside verdicts in cases of this character, even though supported by positive and direct evidence. In the present case we think it is clear that the ends of justice require a new trial.    *Judgment reversed.*