## DAVIS *v.* THE STATE.

The evidence was not sufficient to authorize a conviction, and the verdict of guilty was, therefore, contrary to law.

FISH, P. J., and CANDLER, J., dissenting.  1. The doctrine of Lord Hale, that in rape cases the accused should not be convicted on the uncorroborated testimony of the woman alleged to have been ravished, is merely a rule of evidence in the nature of a caution to juries and trial judges, and furnishes no warrant for a court of errors to set aside a conviction of rape, approved by the trial judge and based on the positive testimony of the alleged victim that the crime was committed.

2. In the present case, even if the doctrine of Lord Hale be applied, there was sufficient corroboration of the testimony of the woman, in that she was proved to be of good character, and the accused admitted having endeavored to avoid arrest and prevent a prosecution.

*Argued April 22, — Decided June 10, 1904.*

Indictment for rape.   Before Judge Russell.   Gwinnett superior court.  ·February 13, 1904.

*Peeples & Peeples* and *John R. Cooper*, for plaintiff in error.
*C. H. Brand, solicitor-general*, contra.

SIMMONS, C. J.   Davis was tried and convicted of the offense of rape.   The woman upon whom the rape was alleged to have been committed testified, in substance, that in August, 1903, the accused came to her house while she was there alone and proposed sexual intercourse, which she declined ; that he then forced her into a small rocking-chair, pinioning her arms with one of his, and accomplished his purpose ; that she did not consent, but resisted with all the power she had ; that she tried to get up and tried to push him from her, but did not attempt to tear his beard or scratch him ; that she had been afflicted with uterine trouble for five years prior to that time, but was improving during the year in which the offense was committed ; that in consequence of her long sickness she was weak and feeble, weighing only 93 pounds.   No threats or intimidation appear to have been used, and the woman further testified that the house in which the alleged crime was committed was within twenty-five or thirty yards of the public road and that the road was much used ; that she had a number of neighbors, two families of them having houses within fifty yards of her house.   She testified that after the accused had accomplished his purpose he left her, but in a

short time returned, passing through her yard.   She did not
state whether he spoke to her at this time or not.   In his state-
ment the accused says that when he came back and passed
through the yard he spoke to her and asked whether her husband
had returned.   She further testified that, after the accused had
passed through her yard, she started to go to her husband, but
stopped, on account of exhaustion, at the house of one of her
neighbors and spent some time there, talking with three women in
the house.   Two of these women testified that she remained an
hour.   According to her own evidence, she felt unable to go on
to where her husband was working, and returned home alone.
She had made no outcry when the sexual act was being per-
formed, nor did she make any reference to the crime during her
visit to her neighbors.   Two of the women at the house visited
testified that she showed no signs of excitement; the third
testified that she appeared to be nervous and excited.   There
were no marks of violence upon her person.   Her clothing was
not torn or disarranged.   The alleged crime was committed at
some time in the afternoon, but the hour does not appear.   Be-
fore dark the husband and a hired man returned to the house.
The wife made no complaint at that time of the outrage upon her.
Shortly afterward the daughter of the accused and her husband
and baby came on a visit and spent the night.   The woman upon
whom the rape is alleged to have been committed cooked supper
for them, and after supper her husband and the son-in-law of the
accused went to visit a neighbor, returning at about ten o'clock.
They retired for the night, the husband and wife occupying one
room and the daughter and son-in-law of the accused another, the
two rooms being separated by a thin partition.   The next morn-
ing the wife arose and prepared breakfast for the guests, who left
about nine o'clock.   During all this time she did not tell her
husband or any one else of the outrage upon her.   Sometime dur-
ing that day, the exact hour not appearing definitely from the evi-
dence, she told her husband what had occurred between her and
the accused.   Some of the witnesses testified that on the after-
noon of the alleged outrage the husband came home before dark,
and that his wife met him in the garden, where they for some
time remained alone before going to the house.   According to
some of the witnesses, she then assisted in " cleaning out " under

the house.    The husband testified that he and the hired man did the work, but that she was "about."    No doctor was called in, nor does any examination of her person appear to have been made.    The accused, in his statement, admitted having had sexual intercourse with her, but stated that it was without any resistance and with her full consent and acquiescence.

Under this state of facts we think the verdict of the jury finding the accused guilty was without sufficient evidence to support it.    The law is well established, since the time of Lord Hale, that a man shall not be convicted of rape on the testimony of the woman alone, unless there are some concurrent circumstances which tend to corroborate her evidence.    The offense of rape seems to be an exceptional one in this regard.    The accused should not be convicted upon the woman's testimony alone, however positive it may be, unless she made some outcry or told of the injury promptly, or her clothing was torn or disarranged, or her person showed signs of violence, or there were other circumstances which tend to corroborate her story.    This rule appears to us to be a sound one.    Without it, every man is in danger of being prosecuted and convicted on the testimony of a base woman in whose testimony there is no truth.    Of course every woman, when she makes up her mind to prosecute for this offense, will testify that the sexual act was accomplished by force and without her consent.    The man is powerless.    He can not be sworn to testify in his own behalf, and he is at the mercy of the woman.    Our people, be it said to their credit, reverence innocence and virtue in the female sex.    When a charge of this sort is made, the people, and the jurors likewise, are apt to let their indignation get the better of their judgment and convict upon evidence which does not authorize it.    It is therefore incumbent upon the courts to scrutinize with care the evidence in such cases.    As was said by this court in *Simmons* v. *State*, 99 *Ga.* 699, 703, "For this reason it is held that in such cases the testimony of the person alleged to have been raped should always be scrutinized with care, and when there is much in the facts and circumstances in evidence to discredit her testimony, it should be deemed insufficient to sustain a verdict of guilty; and hence it is that courts of review, while generally reluctant to disturb a verdict where there is any evidence to support it, frequently set aside verdicts in cases of this charac-

ter, even though supported by positive and direct evidence." The law as to cases of this sort is fully laid down in the opinion of Hall, J., in *Smith* v. *State*, 77 *Ga.* 705, in *Simmons* v. *State*, supra, and in *Innis* v. *State*, 42 *Ga.* 481, and authorities cited. We therefore deem it unnecessary to make any further elaboration of the present case.

*Judgment reversed.     All the Justices concur, except Fish, P. J., and Candler, J., who dissent.*

CANDLER, J. I can not agree to the view of this case taken by the majority of the court. Rape is defined by our law (Penal Code, § 93) to be the carnal knowledge of a female, forcibly and against her will. It will be seen from the statement of facts in the majority opinion that the woman in this case testified to a state of facts which made out a clear case of rape. None of the elements necessary to constitute the crime were lacking. No court, so far as I know, has yet gone to the extent of holding that it is necessary, in order to make out the offense of rape, to introduce the evidence of an eye-witness; for the crime is of such a nature that if such a requirement were laid down, a conviction would be practically impossible. As I understand the ruling of the majority, it is held that there is a lack of sufficient corroboration of the woman's testimony in the circumstances attending the alleged offense to warrant the jury in believing that she told the truth. Laying aside for the moment the question of the right of this court to pass upon the probative value of corroborating circumstances, let us look to the evidence introduced on the trial below. It was shown that the prosecutrix was a weak, delicate woman, who had been in bad health for a number of years. The accused was related to her by affinity, having married her aunt. He had known her since childhood, and it is to be presumed held her confidence to the extent that is usual in such cases. The good character of the woman was abundantly proved. After the alleged offense she endeavored to walk to the place where her husband was, in order to tell him of the circumstances; but her strength failed, and she was compelled to stop at the house of a neighbor on the way, where, however, she had never called before. A witness who saw her at this time testified that she was visibly agitated, seemed unable to sit still, and continually paced the floor. She did not, it is true, make known to her husband the alleged

rape until some time the following day; and this seems to be one of the main points relied on by the majority. During all the period of her silence on the subject others were present in the house. Is it not consistent with truth and virtue for a married woman who has been the victim of such a crime to wait to tell her husband of it until no one save they two are in the house? Is it not conceivable that a modest woman would shrink from making such a revelation to her husband at all? It is also true that she said nothing about the occurrence at the neighbor's house at which she stopped; but what of that? May not a woman who has been ravished be given credit for some sense of shame? Her clothing was not torn; but this is easily accounted for by the fact that she was so weak from ill health as to be able, at best, to make but a comparatively feeble resistance. There was also evidence that the accused avoided arrest, and sought, without avail, to prevent a prosecution. I maintain that these circumstances furnished ample corroboration of the woman's testimony, and fully warranted the conviction of the accused. I am unwilling to hold that a woman of proved good character is unworthy of belief by a jury of upright men when she testifies to a rape upon her person, merely because, despite her feebleness, she did not make some outcry, her clothing was not torn, and she did not reveal the occurrence until the next day.

Much has been said of the doctrine of Lord Hale, and many fallacious rulings have been based thereon. The principle laid down by Lord Hale is stated by Blackstone (2 Cool. Bl. *213) as follows, the italics here used being my own: "And first, the party ravished may give evidence upon oath, and is in law a competent witness; but the credibility of her testimony, and how far forth she is to be believed, *must be left to the jury* upon the circumstances of fact that concur in that testimony. For instance: *if the witness be of good fame*; if she presently discovered the offence, and made search for the offender; *if the party accused fled for it*; these and the like are concurring circumstances which give greater probability to her evidence. But on the other side, if she be of evil fame, and stand unsupported by others; if she concealed the injury for any *considerable* time after she had opportunity to complain; if the place where the fact was alleged to be committed was where it was possible she might have been heard, and she

made no outcry; these and the like circumstances carry a strong *but not conclusive* presumption that her testimony is false or feigned." It will be seen that this is nothing more or less than a rule of evidence for the guidance of the jury, and, under our system, to be considered by the trial judge in charging the jury and passing on the discretionary grounds of a motion for a new trial. There is not a suggestion in all that has been quoted that would authorize a court of errors to interfere with a conviction for rape, approved by the trial judge, for lack of circumstances to corroborate the positive testimony of the woman alleged to have been ravished. But granting, for the sake of the argument, that the view of the majority as to Lord Hale's doctrine is correct, we have in the present case at least two of the concurring circumstances "which give greater probability to her evidence," viz., the witness was proved to be of good fame, and there was evidence that the accused "fled for it." "The testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases, such as to convict of treason or perjury, and in any case of felony where the only witness is an accomplice; in these cases (except in treason) corroborating circumstances may dispense with another witness." Penal Code, § 991. The law of Georgia as to what evidence is necessary to a conviction of crime is here clearly and unequivocally laid down; and how, in view of this statute, the judgment in the present case can be reversed passes my comprehension. On account of the enormity of the crime, two witnesses are required in order to convict one accused of treason. Even the perjurer may be convicted on the evidence of one witness together with corroborating circumstances. So also with the felon whose conviction is dependent upon the testimony of an accomplice. Nowhere, however, does the law lay down what these corroborating circumstances shall be. Only one tribunal known to the law can say when a witness has or has not been corroborated; and that tribunal is the one whose province we are now about to invade, — the jury. This court should not presume to say just how a feeble, delicate woman should act when she has been made the victim of the ravisher. Nor should it go further and hold, as matter of law, that unless she follows in minute detail the rules laid down by them, a jury of intelligent and honest men shall not be permitted to believe her on oath.

The cases cited by the Chief Justice in support of the majority view are all based upon the erroneous theory of the doctrine of Lord Hale, to which I have before referred. Even at that, most of them may easily be distinguished from the case at bar. In *Simmons'* case, 99 *Ga.* 699 it appeared that there was an entire lack of evidence of resistance on the part of the woman alleged to have been ravished, and that "before the alleged intercourse took place she prepared for it by pulling off one of her garments." It did not require the assistance of Lord Hale to set aside a conviction where one of the essential elements of the crime charged was missing. As to *Smith's* case, 77 *Ga.* 705, which was an indictment for assault with intent to rape, I can only say that in my opinion the evidence was amply sufficient to warrant the conviction of the accused, and the court strayed from the true law under a misconception of the doctrine of Lord Hale. *Innis'* case, 42 *Ga.* 473, is not in any sense authority for the ruling now made; for, aside from the fact that Judge Warner dissented from the decision of the majority, the judgment was reversed on account of what the court considered an erroneous charge on the part of the trial judge; and no attempt was made to set up a standard of veracity for the witnesses, by which the jury must be guided. In conclusion I will say that I consider it unfortunate, in view of the many serious troubles that our people have experienced growing out of the frequency of the commission of the crime of rape, that a conviction so well merited should be set aside on grounds so unsatisfactory.

FISH, P. J.　While, under the Penal Code, § 991, to convict of rape is not made an exception to the general rule that "the testimony of a single witness is generally sufficient to establish a fact," in view of some of the prior decisions of this court there must be corroboration of the testimony of the person alleged to have been assaulted, to authorize a conviction of that offense. There is, however, no prescribed rule for measuring the amount or extent of such corroboration. That, like the credibility of witnesses, is a matter solely for the consideration of the jury. In the present case the accused admitted the act of sexual intercourse, but denied that it was committed forcibly and against the will of the woman. She testified positively and unequivocally that it was done forcibly and against her will. There was abundant evidence of her good

character, and an absolute want of evidence of motive on her part for making a false charge against the accused.     There was evidence that she had been sick for years with serious uterine trouble; and that at the time the offense was charged to have been committed she was still afflicted with such disease and was weak and weighed only 93 pounds.     There was some evidence that the accused attempted to avoid arrest, and there were circumstances in explanation of the failure of the woman to make immediate complaint of her injury.     In my judgment the jury were authorized to find that the positive evidence of the woman was sufficiently corroborated to warrant a conviction; and the trial judge having approved the verdict, it should not be disturbed.