## 2309. HUEY *v.* THE STATE.

1. On a trial for assault with intent to rape, the particulars of a complaint made by the female are not admissible in behalf of the prosecution, in the first instance, unless they are a part of the res gestæ. The true rule is, to admit evidence of the fact of complaint in such cases, and in no case to admit more. The only purpose in admitting evidence of the complaint is to rebut the inference of ˙consent, that might be drawn from the silence of the injured female; but the complaint can not be received as proof that the crime was in fact committed.

2. The corpus deliciti, the venue, the place where, and the time when the alleged assault was made, and any explanation.of the condition of her clothing, or as to bruises on her body, made by the female as a part of her complaint, are particulars which should be excluded from evidence.

3. The complaint of a female alleged to have been assaulted, made three days after the assault, is not admissible in evidence as a part of the res gestœ, when it appears that she had frequent opportunities for making complaint to relatives and friends, and no reason is shown for her delay and silence.

4. In a case of assault to rape, the corpus delicti is not legally proved by the particulars of a complaint not a part of the res gestæ, and by a confession uncorroborated by other evidence. Neither separately nor together will such complaint and confession be sufficient to show that the crime was in fact committed.

Conviction of assault with intent to rape; from Mitchell superior court—Judge Park. October 29, 1909.

Argued January 12,—Decided February 10, 1910.

Ernest Huey was convicted of an assault with intent to rape. His motion for a new trial being overruled, he excepted. The following is a substantial statement of the evidence: The female alleged to have been assaulted was fifteen years old and recently married to the defendant's brother. The defendant was a young man attending school, and lived in the same house with his brother and his sister-in-law. On Wednesday, in company with her husband, she went to visit her parents. Her father testified that on the following Thursday morning she told him that Ernest Huey, on the preceding Monday afternoon when he came from school, made a "felonious assault" upon her at her home. She exhibited to him her arm, and there was a bruised spot on it about the size of a dollar. "She didn't tell me much, because she seemed to be ashamed. She told her mother more." The mother testified as follows: "As to whether my daughter made any complaint on that occasion of her visit to my home, on Wednesday, of a felonious assault having been committed on her, yes, sir, she claimed Ernest

Huey did. As to whether she stated at what particular place this felonious assault was committed upon her, yes, sir, she said it was at the Huey's home, meaning the home where she and her husband and Ernest all lived together with her husband's father. In reference to an examination I made of the person of my daughter on that occasion of the visit, yes, sir, I did make an examination of her person. She showed me her arm. It was bruised where he caught hold of her." Mr. Huey's home was in Mitchell county. The evidence further showed that the defendant moved to his brother's home on the Monday when the crime was alleged to have been committed, and on the following Thursday he left the county and went to Florida, stating, as a reason for his leaving, that "he had got into a little trouble and thought it best to get off for a while." He was arrested in Florida, charged with the assault, and brought back to Georgia for trial. A witness named Brown, who had lived in the county about a year (having lived in various and sundry places prior to that time), testified, that about a week before the trial he met the defendant in the town of Pelham, and the defendant rode home with him in his buggy; that while on the way the defendant made to him the following statement: "I gave away some whisky to-day among my friends. I have got to have some friends in this case (meaning the assault to rape case) and some money too, for you know money aint much good unless you got friends." "He said: 'I always thought a good deal of you, and I am going to tell you something;' and I told him if he wanted to tell me, all right, but that I was not going to ask him to tell me nothing, and he said: 'You know the trouble that I am in and the crime that is against me. I will tell you all about it, the first starting of the trouble. If it had not been for me, the trouble would not be here to-day. I ruined my brother's wife, ruined the whole family, scandalized them. I am the cause of the whole business being in the trouble we are in to-day.' He said that he ruined his brother's wife; that when he got home from school and got after her in one room and she started to go out in the back yard and tell her husband, he said that he either had a gun, or picked up a gun and made her come back in the house. He didn't right plain out and say he done it. He said he ruined her, ruined his brother's wife and the whole family, caused the whole trouble." The nearest neighbor of the injured female testified

that she lived about 143 yards from the dwelling-house of the Huey's; that she was at home on Monday when the assault was alleged to have been made; that there was no obstruction between the two houses; that on that day she did not see either the defendant or the injured female at this house, although she could see plainly the dwelling-house. Late in the afternoon, she said, "Ruth came down after the cows, but did not see the defendant at all during the day. Early the next morning, Tuesday, about 6 o'clock, Ruth Huey came to my house. She and I sat on the front porch talking until nine o'clock. We talked about various things, usual conversation that neighbors have. While sitting on my porch we saw Ernest Huey in his buggy at his front gate. She looked up and saw the buggy and said, 'I wonder what he came back for?' That was all that was said about him. I saw Ernest on Thursday when he went off. It was talked around that he was going off, and I heard it from Ruth. Ernest Huey was engaged in farming on his own account." The foregoing is all the material evidence in the case. The female alleged to have been assaulted died before the trial, and was never examined as a witness. The defendant introduced no testimony, and relied upon his statement, denying the assault and the alleged confession, and admitting that he had a trivial quarrel with his sister-in-law about a knife, but giving no particulars of the quarrel. The defendant objected to the testimony of the parents of the female as to the particulars of the alleged complaint, insisting that it was not a part of the res gestæ, was irrelevant, hearsay, and inadmissible. The court overruled the objection; and this ruling is assigned as error. The defendant excepted also to the charge of the court on the alleged confession, insisting that under the facts there was no confession. Other exceptions to rulings on testimony and excerpts from the charge are not deemed material. It is insisted that the verdict is without support of legal evidence.

*Pope & Bennet,* for plaintiff in error.

*William E. Wooten, solicitor-general, Reuben R. Arnold,* contra.

HILL, C. J. (After stating the foregoing facts.)

In prosecutions for rape or assault with intent to rape, the rule in this State, in harmony with the weight of authority, both in England and in the United States, is that when the complaint made by the injured female does not constitute a part of the res gestæ,

the details or particulars of the complaint can not be introduced in evidence, in the first instance, by the State. On direct examination the prosecution can prove the fact that complaint of the injury was made by the injured female, and when, and to whom she made it; and these facts can be shown either by the injured female or by the person to whom she complained. Two cases involving the exact question have been before our Supreme Court: *Stephen* v. *State,* 11 *Ga.* 225; *Lowe* v. *State,* 97 *Ga.* 792 (25 S. E. 676). In the first case the court declares the rule as follows (p. 223): "In a prosecution for a rape, the fact of the woman's having made a complaint soon after the assault took place is evidence; . . the particulars of her complaint can not be gone into." In the *Lowe* case the court quotes with approval the decision in the *Stephen* case, and says that no material departure from that rule had ever been made by that court. Greenleaf, in his great work on Evidence (vol. 3, §213), states the rule as follows: "Though the prosetrix may be asked whether she made complaint of the injury, and when and to whom, and the person to whom she complained is usually called to prove the fact, yet the particular facts which she stated are not admissible in evidence, except when elicited on cross-examination, or by way of confirming her testimony after it has been introduced. On the direct examination the practice has been merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive only a simple yes or no." Mr. Russell declares that "the invariable practice is not to permit either the prosecutrix, or the person to whom the complaint is alleged to have been made, to state the particulars of the complaint during the examination in chief." 3 Russ. Crimes, §§923, 924, 925. To the same effect see 1 Wharton on Evidence, §566; Roscoe on Criminal Evidence, 23, 24; 1 Phillips on Evidence, 233; 2 Wigmore on Evidence, §1134 et seq.; 23 Am. & Eng. Enc. Law (2d ed.), 874; 33 Cyc. 1463. Many decisions sustaining the above-stated view of the text-writers on this subject are to be found in notes of the Encyclopædia and of the Cyclopædia, on the pages given. There are also authorities for the contrary view, both courts and a few text-writers.

The purpose in admitting in evidence the complaint of the injured female is to rebut the inference of consent that might be drawn from her silence. It is universally held, even in those juris-

dictions that admit in evidence the particulars of the complaint, that the complaint can not be received as evidence of any substantive fact, and that it is the duty of the trial judge to impress upon the jury that they can not accept the complaint as any evidence of the truth of the facts complained of, or for any other purpose than than of enabling them to judge whether the conduct of the woman was consistent with her accusation. This being true, it seems to us that the safe and just rule is to admit in evidence only the bare fact of the complaint. The crime quickens into hot resentment every instinct of manhood, and it would be difficult for jurors to give to the abhorrent details only a qualified weight, however they might be cautioned by the court. Indeed, any other would be a most dangerous rule in a land where chivalry feels as a grievous wound any stain upon a woman's honor, and holds so sacred her person that punishment waits not on proof, but swiftly follows accusation. But whether the bare complaint, or all the particulars and details of the complaint, be admitted in evidence, the legal effect is the same, and neither can be accepted by the jury as evidence that the crime was committed. There must be evidence aliunde and corroborative, proving beyond a reasonable doubt that the crime as complained of was in fact committed by the accused. Of course, on cross-examination all the particulars can be shown; or when on cross-examination some of the particulars are shown, the prosecution can prove all the details of the complaint.

Recurring to the rule adopted in this State and supported by the great weight of authority, was not that rule manifestly violated by the learned trial judge in admitting the evidence of the parents as to the complaint of the injury made to them by their daughter? Did not that complaint contain particulars and details which were not admissible, especially where the daughter was not a witness, and there was no question of corroboration. The testimony relating to the complaint was not elaborate or minute as to details or circumstances. There seems to have been an effort by the solicitor-general to restrict the witnesses. But it must be conceded that several most important particulars were disclosed by the complaint as testified to by the two witnesses, to wit, the corpus delicti, the identity of the defendant, the time when the offense was committed and the venue. These essential facts are nowhere shown except by the complaint and the confession. And neither the complaint

nor the confession, separately or together, can legally prove either one of these facts to the extent of warranting conviction. That the things enumerated are particulars of the criminal act which can not be shown by the complaint of the injured female, unless part of the res gestæ, has been repeatedly and distinctly ruled. In the *Stephen* case, supra, the Supreme Court held that the female alleged to have been assaulted would not be allowed to name in her complaint the person who assaulted her, "unless by way of information to lead to his arrest." Here the defendant was under arrest and on trial. In *Canida* v. *State*, 130 *Ga.* 15 (60 S. E. 104), it is said that testimony in a rape case that the prosecutrix "said some one had attempted to assault her" was merely hearsay, and was of no probative value. "Where the party ravished has died before the trial, it is not competent to prove the particulars of a complaint made by her soon after the offense was committed, with a view of showing who the parties were who committed it." 3 Russell on Crimes, §924. Nor is the declaration of the injured female admissible for the purpose of proving the corpus delicti, unless it be a part of the res gestæ. Whart. Crim. L. 1150; People *v.* McGee, 1 Denio (N. Y.) 19; Oleson *v.* State, 11 Neb. 276 (9 N. W. 38, 38 Am. R. 369), and cases cited in note. Without further elaboration, see the many cases cited in 23 Am. & Eng. Enc. Law (2d ed.), 876, and in 10 Enc. Ev. 587, in support of the proposition here asserted, that none of the particulars mentioned can be proved by the complaint of the injured female, when not a part of the res gestæ. Both parents were allowed to testify to one detail of the criminal act disclosed by the complaint which was clearly inadmissible and calculated to inflame and prejudice the jurors. This was the bruise on the arm which the injured female showed as having been made by the defendant at the time of the alleged assault. Testimony of similar particulars was expressly excluded in both the *Stephen* and *Lowe* cases, supra. In the *Stephen* case the objectionable language was, "it was Stephen that hurt her." In the *Lowe* case, permitting the mother to testify that complainant showed her the clothes she had on at the time of the attempted rape was held error. Of course it can not be reasonably contended that the complaint, under the facts of this case, was any part of the res gestæ. It was made three days after the alleged commission of the offense, after the woman had opportunities of complaining

to her husband and to intimate friends of her own sex and to others. There was no reason shown for her failure to make a complaint sooner, and no explanation of her silence. True the learned trial judge charged the jury that they could consider any evidence of coercion or restraint as an explanation of her silence, but there was no evidence of any coercion or restraint. On the contrary, absence of all restraint, and complete volition, were shown by the evidence. The complaint was certainly not a declaration accompanying the criminal act, or "so nearly connected therewith in time as to be free from all suspicion of device or afterthought." Penal Code, §998; Civil Code, §5179; *McMath* v. *State, 55 Ga.* 303 (4) ; 33 Cyc. 1466, and cases cited in notes. We conclude that the trial court erred in admitting in evidence the particulars of the complaint, and should have confined the proof on this subject to the bare fact that a complaint was made. Anything more was hearsay in a very objectionable form, without probative value, and was manifestly most hurtful to the defendant.

Learned counsel for the plaintiff in error also insist that even the mere fact of a complaint in this case was not admissible, since the complainant was not a witness. This contention is sustained by abundant authority. Greenleaf declares, without qualification, that "where she is not a witness in the case, it [the complaint] is wholly inadmissible." 3 Gr. Ev. 213. Wigmore asserts that "the woman must be a witness, since the only object of the evidence is to repel the supposed inconsistency between the woman's present testimony and her former silence. It is obvious that if she has not testified at all, there is no inconsistency to repel, and therefore the evidence is irrelevant." 2 Wig. Ev. §1136. And we think the same rule is clearly deducible from the decisions of the Supreme Court in the cases of *Stephen, Lowe,* and *McMath,* supra. Indeed, some courts go to the extent of holding that even where the victim is a child of tender years, or a person non compos mentis, so as to be incompetent as a witness, evidence that a complaint was made is not admissible. 23 Am. & Eng. Enc. Law (2d ed. 877), notes 10, 11 and 12. We are not prepared to go to this extent. The ends of justice, ex necessitate rei, in some cases might demand a relaxation of the strictness of the rule. But we do think that the complaint should never be allowed in evidence where the com-

plainant is not sworn and examined, when she is accessible and competent as a witness.

We have thus far considered the law applicable to the complaint which was admitted in evidence in this case, but even if the law did not exclude the particulars of the complaint as above indicated, the substance of the complaint itself possesses little, if any, evidentiary value. The general statement in the complaint that a "felonious assault" was made falls short of showing that the particular felonious assault for which this defendant was on trial, to wit, an assault with intent to commit rape, was the character of the felonious assault that was made upon the female. Ordinarily, the words "felonious assault," when applied to an assault upon a female, are intended to characterize an assault with intent to commit rape, but the law of evidence requires exactness in description in designating or characterizing the offense alleged to have been committed. There are more felonious assaults than assaults with intent to commit rape. There are assaults with intent to murder, and assault with intent to rob, and the use of the words "felonious assault" does not exclude absolutely all kinds of felonious assaults except an assault with intent to commit rape. In popular significance they do not exclude the suggestion of the consummated act.

The charge of the court on the law of confessions is objected to. It is contended that there was no confession to which the law was applicable. The court in the charge properly left to the jury the decision of the question as to whether the alleged incriminatory statements amounted to a confession or not, and it is probable that the jury gave considerable weight to these alleged incriminatory statements in connection with the particulars of the complaint which we have held were improperly admitted. Even if the alleged statements be treated as a confession of some crime which the defendant had committed, yet, taken alone, they by no means prove the commission of the particular crime for which the defendant was indicted and convicted. The defendant said, according to the witness, that he had "ruined his brother's wife, and had scandalized his brother's family." If he had made a simple assault upon her, without accomplishing his purpose and without completing the act, it would be an extreme and unwarranted conclusion to say that he had "ruined her." The more rational construction of the language would be that he had accomplished his purpose; and if he had ac-

complished his purpose, he could not have been lawfully convicted of an attempt to accomplish it.    He might have defamed the fair name of his brother's wife and circulated slanderous reports against her, and thus have ruined her.    Certainly the language is susceptible of other constructions than that placed upon it by the State.    And before the confession could have probative value as evidence, it ought to be clear that it referred to the crime for which the defendant was on trial, and to no other.    The view we take of the case, as above indicated, makes it unnecessary to consider or decide any of the other assignments of error, for if we are right in this opinion, there was no legal proof of that most essential fact in the trial of every criminal case, to wit, the corpus delicti.    If the corpus delicti, as we have endeavored to show, can not be lawfully shown by the woman's complaint made subsequently to the alleged offense, and which can not be considered as a part of the res gestæ, the only evidence that the crime was committed was the indefinite statement in the nature of a confession, alleged to have been made by the defendant.    It is settled by the statute of this State, as well as by repeated decisions, that there must be proof of the corpus delicti, aliunde the confession.    Civil Code, §1005; *Allen* v. *State,* 4 *Ga. App.* 458 (61 S. E. 840); *Boyd* v. *State,* 4 *Ga. App.* 58 (60 S. E. 801); *McAllister* v. *State,* 2 *Ga. App.* 654 (58 S. E. 1110); *Milner* v. *State,* ante, 82 (66 S. E. 280); *Bines* v. *State,* 118 *Ga.* 320 (45 S. E. 376, 68 L. R. A. 33), and cit.

Nor can it be claimed that flight, if in fact the defendant did flee, was sufficient to prove the corpus delicti.    Flight may be a slight circumstance tending to show conscious guilt of some offense, but certainly it can not be sufficient proof of the particular crime charged.    There must be other evidence of the particular crime, before flight becomes specially significant.    Flight is but a confession implied by conduct, and can have no greater weight than actual confession by words.

We have discussed the case at greater length probably than was necessary.    We have been led to do so because of the gravity of the offense of which the young man was convicted, and from great reluctance to set aside a verdict approved by the trial judge, unless satisfied that the verdict was based upon evidence erroneously allowed to go to the jury, and was therefore unauthorized by law.

*Judgment reversed.*