1. The evidence supports the verdict and the general grounds of the motion for new trial are without merit.
2. Where the defendant is on trial for the crime of rape, details and particulars of the complaint made by the prosecutrix should not be admitted in evidence. This rule was not violated where the State's witness simply related that she examined the person of the female alleged to have been raped and observed a bruise on her ankle, there being nothing to indicate that the prosecutrix made any statement with reference to such bruise, or pointed it out to the witness.
3. The trial court properly charged the jury as to the consideration which it might give to the testimony of a witness, admitted without objection, that the defendant had raped her under similar circumstances a few weeks before the occurrence for which the defendant was on trial.
 No. 15664. JANUARY 8, 1947. REHEARING DENIED FEBRUARY 7, 1947.
L. Davis was convicted, in the Superior Court of Baldwin County, of rape, and was sentenced to imprisonment in the penitentiary for a term of from one to six years. He filed a motion for new trial on the usual general grounds, which was later amended by the *Page 14 
addition of two special grounds, and the exception is to the overruling of his motion as amended.
The prosecutrix was Mrs. J. H. Whittle, and her evidence, in brief, was as follows: Her husband is a wounded veteran of World War II, and in December, 1945, he was in a military hospital at Augusta. He visited his family at Christmas, and on December 27, Mrs. Whittle accompanied him to Augusta because he was unable to make the trip by himself. She decided to stay in Augusta until the 29th, their anniversary, but she could not get a hotel room, and had to spend the night sitting in the bus station. On the next day she visited her husband at the hospital and then came back to the bus station to get a bus, deciding that she must return to her home, since she could not get a room. After buying her ticket she went to get coffee and a sandwich, and they announced the bus for Macon. The loading platform was crowded and she walked back of the bus. The bus driver shook his head, and the defendant then walked out and tapped her on the shoulder and told her that he had a bus going to Macon, and directed her as to how to get on it. The bus which the defendant was driving was mostly loaded with colored people, and she sat in the first seat next to the driver. She slept from Augusta to Sandersville, where some transfer of passengers was made. The defendant awakened a soldier sitting behind her and told him to transfer to the other bus, and since she had heard the soldier say that he was going to Macon, she supposed that she would also have to change buses, and started to collect her things. The defendant asked her if she was going to Macon, and when she replied that she was, he told her that his bus was going to Macon, and she sat back down. At Tennille the colored passengers got off the bus, leaving only her and the defendant remaining on the bus. She had been talking to the defendant, telling him about her husband and two children, and having a general conversation with him. About eight miles from Tennille he told her that he intended to park the bus, and she objected. He stopped the bus and turned out the lights. He then came back where she was, and when she started to get up, he jerked her down, and tried to put his arm around her, and she slapped him. He jerked her out of the seat and pushed and shoved her to the back seat. She resisted this with all the strength she had, but he weighed about 200 pounds, and jerked her up "like I could jerk my *Page 15 
baby up." He pushed her down on the long back seat and had intercourse with her forcibly and against her will. Her leg was bruised, her head hit the suitcase rack, and he tore her slip and skirt. This occurred in Washington County. The defendant then went back to his seat. "He was mad. He said I didn't try and I said I did not try. He said, `Well, you will next time.'" She understood by this remark that he planned to have intercourse with her again and she tried to reason with him. She left her seat and went to the front of the bus and sat on the "little hood thing" where she could face the defendant while she was talking to him. They passed through Milledgeville, but did not stop until they reached a described place in Baldwin County. He parked the bus in a road off of the highway, near an empty house. When he stopped the second time, she told him: "I have had hard enough time getting my children here for the man I loved and I am not going to have one for you." The defendant then provided himself with a contraceptive. He was standing in the door at this time, which prevented her getting off of the bus. They had another struggle and he again pushed her to the back of the bus. She fought him all she could but he was stronger, and he again had intercourse with her forcibly and against her consent. When they arrived in Macon she had only fifteen minutes to change buses, and since the defendant had convinced her that the bus company would do nothing about the matter if she reported it, she decided to wait to tell anyone until she reached her home. She arrived in Columbus at 3:20 in the morning. She did not tell her sister about the matter when she first arrived because her sister was not well, and she did not want to discuss it before her sister's children. She told her sister about it the next day about 12 o'clock, and later in the day talked with her sister-in-law. She called the officers of the law, and they told her that she would have to go back to Milledgeville to swear out a warrant. They could not arrange to get a car until Monday, at which time she came to the office of the solicitor-general of Baldwin County to report the matter.
On cross-examination, the prosecutrix was questioned about the conversation with the defendant before he stopped the first time, and she related two things that they had discussed. She said that she told him about a cab driver in Augusta who had made advances toward her, and also about someone breaking in her house in Columbus. *Page 16 
She stated that when he stopped the bus she did not call for help, giving as her reason that she was afraid. She said that she did not know how to open the bus door, that she did not try to open the door or window. She stated that she was not sure whether she received the bruise on her ankle in Washington County or Baldwin County, but the bruise on her head was received in Baldwin County. She did not call for help when she passed through Milledgeville, since it was 10:45 at night, cold and raining, and if there was any one on the streets she did not see them.
Mrs. C. A. Belisle, sister-in-law of the prosecutrix, and her husband, C. A. Belisle, both testified that the prosecutrix had reported to them that she had been raped by the defendant. They testified that they saw a bruise on her ankle.
Charlotte Wright, a negro woman, 54 years of age, testified that: On November 17, 1945, she boarded a bus driven by the defendant to go to Milledgeville. She was the only passenger on the bus, and the defendant stopped the bus and had intercourse with her against her consent. She reported the incident to the solicitor-general, but she did not identify the defendant until after he had been arrested on the charge made by the prosecutrix.
The defendant introduced E. W. Jackson, of Sandersville, who testified that: He remembered the bus on which the prosecutrix was riding coming in to Sandersville. Passengers were changed there, and the defendant made the announcement that all passengers going to Macon should transfer to the other bus. One lady stayed on the bus.
Johnny Wilkerson, the driver of the other bus to Macon, testified that the defendant's bus gave him trouble and the passengers were transferred to Wilkerson's bus, and he heard the defendant make an announcement that all passengers going to Macon and beyond should change to the other bus.
The defendant made the statement that: His bus gave him trouble between Augusta and Sandersville, and Wilkerson suggested that the passengers be transferred to his bus. He announced that all passengers going to Macon and beyond should transfer to the other bus. The prosecutrix made no effort to get off the bus, and asked if he was going to Macon. He told her that he hoped to get there, and she said that she was not in a hurry, that she would go with him. They talked together, and she told him about some *Page 17 
trouble she had with a taxi driver and with a man in Columbus, and he understood from her conversation that she would not object to stopping. He had intercourse with her with her consent. After they drove on, she talked to him about being afraid that she would become pregnant, and the next time they stopped he used a contraceptive. On both occasions the prosecutrix was willing to have sexual relations with him. He did not have sexual intercourse with Charlotte Wright.
Several witnesses, introduced by the State in rebuttal, testified that the character of the prosecutrix was good.
1. The testimony of Mrs. Whittle is to the effect that the act complained of was done forcibly and against her will. The defendant insisted that the prosecutrix consented to the act. Counsel for the defendant strongly contends that the facts and circumstances testified to by Mrs. Whittle support the defendant's contentions and demand a finding that she consented, and that the verdict should be set aside. It is pointed out, as to the occurrence in Baldwin County, that she made no outcry; she did not attempt to escape; she testified to no injury received from such act; she continued to ride with the defendant and engage him in conversation after the occurrence in Washington County; she made no outcry or effort to attract attention as the bus passed through Milledgeville; she did not report her injury and the attack made upon her when she reached Macon, and did not promptly report it to her sister upon her arrival at her destination. These, and other facts and circumstances, stressed by counsel, might persuade us that the truth of the present case is found in the quotation by Mr. Justice Lumpkin in Jones v.State, 90 Ga. 627 (16 S.E. 380), from Lord Byron,
"A little still she strove, and much repented,
And whispering, `I will ne'er consent' — consented," were we viewing this case as a juror. And if vested with the discretion of the trial judge under the Code, §§ 70-202 and 70-206, as construed by decisions of this court, there might be some inclination to exercise such discretion in behalf of the defendant, and grant him a new trial. But under art. 6, sec. 2, par. 4 of the *Page 18 
Constitution of 1945 (Code, Ann. Supp., § 2-3704), the jurisdiction of this court is limited to the correction of errors of law. Whether or not the verdict of the jury in this case is supported by the evidence is a question of law for determination by this court. Other general grounds of the motion for new trial are addressed to the discretion of the trial judge and not this court. See Porter v. Kolb, 46 Ga. 266; Bussey v. Moses,48 Ga. 120; Slaton v. Fowler, 124 Ga. 955 (53 S.E. 567);Houston v. State, 186 Ga. 145 (197 S.E. 118); Merritt v.State, 190 Ga. 81 (8 S.E.2d 386); Holmes v. State,194 Ga. 853 (22 S.E.2d 808); Cooper v. State, 197 Ga. 612
(7) (30 S.E.2d 177).
In the case of Davis v. State, 120 Ga. 433
(48 S.E. 180), cited by counsel for the defendant, it was held: "The accused should not be convicted upon the woman's testimony alone, however positive it may be, unless she made some outcry or told of the injury promptly, or her clothing was torn or disarranged, or her person showed signs of violence, or there were other circumstances which tend to corroborate her story." While the rule quoted from the Davis case was by a divided bench, it was followed in Griffith v. State, 176 Ga. 547 (168 S.E. 235), by a divided bench. Mr. Justice Fish in his dissent in theDavis case appears to have stated the correct rule, however, as to the corroboration required, in the following language: "There is . . no prescribed rule for measuring the amount or extent of such corroboration. That, like the credibility of witnesses, is a matter solely for the consideration of the jury." See Smith v.State, 77 Ga. 706 (2a); Smith v. State, 161 Ga. 423
(131 S.E. 163).
While it appears that the prosecutrix waited until the following day to make any report to her sister as to her alleged mistreatment by the defendant, the fact that she reported it then may have been accepted by the jury as corroboration. This court will not say as a matter of law that such report would not amount to any corroboration. The evidence as to a bruise on her ankle (which will be more fully dealt with in the second division of this opinion), may have been considered by the jury as corroboration. The fact that the prosecutrix traveled from Columbus to Milledgeville within four days from the occurrence to initiate criminal charges might be considered by the jury as inconsistent with the act of a woman who had voluntarily entered into a sexual relationship with the defendant. *Page 19 
In Simmons v. State, 99 Ga. 699 (27 S.E. 755), cited by counsel for the defendant, it was said: "It is not required that the female shall do more than her age, strength, and the attendant circumstances make it reasonable for her to do in order to manifest her opposition; but it must appear beyond a reasonable doubt that there was actual resistance, or that resistance was prevented by violence or restrained by fear." SeeMelton v. State, 184 Ga. 343 (191 S.E. 91). From the evidence the jury might have determined that further resistance by the woman at the time was restrained either by violence or fear. In any event, the testimony of the prosecutrix was corroborated by some evidence, and it was not error to overrule the general grounds of the motion for new trial. We find it unnecessary to make any comment as to the ruling made in theDavis case, supra, followed in the Griffith case, that corroboration of the female is required where she is capable of consenting, since the rule, if correct, is met by the evidence offered on behalf of the State.
2. In amended ground 1 of the motion for new trial, objection was made to the following testimony of Mrs. C. A. Belisle, a witness for the State: "Q. Did you examine her person [the prosecutrix]? A. Yes. Q. Did you examine any part of her body when she came and made the report to you? A. Yes. Q. What did you see? A. She had a bruise on her ankle. Q. Did you see this bruise? A. Yes." The objection made by counsel to the evidence was that it was hearsay. The trial court properly overruled the objection and admitted the testimony. The ruling made in Huey
v. State, 7 Ga. App. 398 (66 S.E. 1023), and Lowe v.State, 97 Ga. 792 (25 S.E. 676), to the effect that details and particulars of the complaint can not be introduced in evidence by the State, was not violated here. Both of the cases cited and relied upon by counsel for the defendant are clearly distinguishable on their facts from the present case. In theHuey case, the female alleged to have been injured died before the trial, and her parents were permitted, over objection, to testify to particulars of the complaint made by her. In theLowe case, the mother was permitted to testify that her daughter showed her "the clothes she had on at the time," which, the court held, was in effect permitting the mother to swear that the clothes in question were in fact worn by the prosecutrix at the time of the alleged assault by the defendant. In the present case, it was not shown that the prosecutrix had made any *Page 20 
statement to the witness about the bruise, but on the contrary, the witness testified to a fact that she had observed, leaving it to be connected with the alleged assault by the testimony of the prosecutrix. What the witness actually saw was not hearsay. SeePierce v. State, 167 Ga. 376 (145 S.E. 450).
While the evidence complained of was properly admitted, a new trial would not be required were this not true, for the reason that similar testimony was elicited from this witness on cross-examination, and another witness was permitted to testify to the same facts without objection. See Irwin v. State,194 Ga. 697 (2a) (22 S.E.2d 499). This ground of the amended motion is without merit.
3. Ground 2 of the amended motion for new trial complains of the following from the charge of the court: "The defendant, gentlemen, is on trial for the particular offense charged against him in this bill of indictment, and none other. Where knowledge, motive, intent, good or bad faith, and other matters dependent upon a person's state of mind are involved as a material element in a criminal offense with which the defendant is charged, evidence of the defendant's conduct with reference to similar transactions about the same time is admissible for the consideration of the jury in so far only as they may tend to illustrate the state of the defendant's mind on the subject involved. Whether they illustrate it or not is a question for the jury. Any evidence with reference to other transactions of the defendant should be limited by the jury to the consideration of the state of the defendant's mind with reference to the subject involved in the case now on trial." The defendant insists that the above excerpt from the charge is erroneous and injurious to him because: (a) It was not sound as an abstract principle of law; (b) it was confusing to the jury; (c) it was misleading to the jury; (d) the jury was not informed that the other offense must carry proper evidence of guilt; (e) the court erred in not making the charge clear so that the jury would have known that, if the evidence of Charlotte Wright was not corroborated, they should not consider it; (f) the charge did not instruct the jury as to whether they should have considered the similar crime if there was no evidence of a crime; (g) the charge left the testimony of Charlotte Wright to be accepted by the jury as properly proving a similar offense; (h) the defendant was on trial for the rape of Charlotte Wright as much as for the offense charged in the indictment, *Page 21 
and the charge failed to inform the jury that Charlotte Wright's testimony should not be considered unless corroborated.
The objections urged are clearly without merit. The court instructed the jury that the defendant was on trial only for the offense charged in the indictment (the alleged rape of Mrs. Whittle), and that the evidence of Charlotte Wright was admissible only to illustrate the state of the defendant's mind, and whether or not it did so illustrate it was a question for the jury. The evidence of Charlotte Wright was admitted without any objection. In Merritt v. State, 168 Ga. 753 (149 S.E. 46), it was said: "The general rule is, that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible; but to this rule there are several exceptions. Among them is the admissibility of evidence showing or tending to show the commission of crimes other than that for which the accused is on trial, for the purpose of showing motive, plan, or scheme." In the Merritt case, the defendant was charged with rape and timely objections were made to the introduction of evidence tending to show the commission of similar crimes under a plan used by the defendant. This court held that the evidence was admissible, and that the charge of the court in connection therewith was not error. In this connection, see also: Cawthon
v. State, 119 Ga. 396 (5) (46 S.E. 897); Wilson v.State, 173 Ga. 275 (2) (160 S.E. 319); Loughridge v.State, 181 Ga. 263 (182 S.E. 12); Fowler v. State,189 Ga. 733 (2) (8 S.E.2d 77); Barkley v. State, 190 Ga. 641
(2) (10 S.E.2d 32); Andrews v. State, 196 Ga. 84 (4) (26 S.E.2d 263). The evidence of Charlotte Wright having been admitted without objection, the judge should properly have charged the jury as to the legal effect of her testimony. This he did. Had he failed to do so, such failure might have been a proper ground in a motion for new trial.
There being sufficient evidence to support the verdict, and the special assignments of error being without merit, the judgment denying a new trial must be affirmed.
Judgment affirmed. All the Justices concur, except Wyatt, J.,who dissents, and Atkinson, J., who concurs in the judgmentonly. *Page 22