27928, 27944. OVERTON v. THE STATE (two cases).

SUBMITTED MAY 14, 1973 — DECIDED JUNE 21, 1973 —
REHEARING DENIED JULY 12, 1973.

*Neely, Freeman & Hawkins, J. R. Cullens,* for appellants.

*David N. Vaughan, Jr., District Attorney, Arthur K. Bolton, Attorney General, Courtney Wilder Stanton, William F. Bartee, Jr., Assistant Attorneys General,* for appellee.

MOBLEY, Chief Justice. Ray Overton was indicted for the offense of rape. His wife, Barbara Overton, was indicted for the offense of intentionally aiding and abetting him in the commission of the rape. They were jointly tried, and both were convicted. Ray Overton was given a sentence of five years, and Barbara Overton a sentence of two years. They have filed separate appeals, enumerating the same errors in each appeal. Since one who intentionally aids or abets in the commission of a crime is a "party" to the crime (Code Ann. § 26-801; Ga. L. 1968, pp. 1249, 1271), Barbara Overton was convicted of a capital felony under our statutes, and jurisdiction of her appeal is in this court.

The prosecutrix was 15 years old at the time of the trial. She had been friends with the Overtons, and particularly Mrs. Overton, when they lived in the same neighborhood, and had frequently visited in their home. She testified that: About 2:00 a.m. on the date of the alleged crime, the Overtons came to her home, and Mrs. Overton came in and asked her mother if she could stay with Mrs. Overton that night because Mr. Overton was going on a trip. Her

mother at first objected, but then agreed, and she went with them. Mrs. Overton told her that she would sleep with them, that they had a king-size bed, and Mr. Overton was leaving and there would not be any sense in her changing from one bed to the other. When she got in bed, Mrs. Overton was in the middle. When she awoke, Mrs. Overton was holding her wrist, Mr. Overton was on top of her, Mrs. Overton had her other arm across his shoulder, and Mr. Overton was having intercourse with her. This continued for a minute or two. She tried to raise up and he just held on tighter. A minute or two later he raised up on his left side, told Mrs. Overton "to do something and ... pulled her head. He brought her head down on—well—his private parts. And—for a minute or two—and then Barbara came back up and lay down and Ray rolled off to the right, on the other side of her, and when he did, I jumped up and ran downstairs." She was sitting on the couch there crying and Mrs. Overton came down and told her that Mr. Overton was sorry and wanted to apologize to her. Mrs. Overton finally persuaded her to go back upstairs, but Mr. Overton said that he was not sorry that he did it. Mrs. Overton told him to shut up and move over, and told her that he would not bother her anymore. She lay down again and was about to go to sleep when Mr. Overton put his hand on her hip. She knocked his hand off and told him to leave her alone, and he said he would not. She started to get up and he put his hand on her and she could not get up. Then he turned back over and took his hand off. A few minutes later he put it back again and she knocked it off, and raised up, and looked at him "sort of hard," and he jerked her hair. She started to lay back down and he grabbed the back of her head, with her hair, jerked it back up, and hit her with his hand and told her not to look at him that way, that he would slap her teeth down her throat. She lay back down and he put his hand back on her again and she knocked it off and jumped up and went back downstairs.

Mrs. Overton came downstairs. She was crying, and told Mrs. Overton that she was not going back up there and that she wanted to go home. Mrs. Overton told her that she could not, that it was too late, and that Mr. Overton was sorry. Mrs. Overton went back upstairs and had a conversation with Mr. Overton. She heard Mrs. Overton say, "you shouldn't have hit her," and "you scared her." Mr. Overton said, "well, I don't care." Mrs. Overton came back down and persuaded and pulled her back up the stairs. Mr. Overton moved over and Mrs. Overton got in the middle of the bed, and she lay down on the edge, and almost went to sleep. Mr. Overton again put his hand on her hip, and she pushed it off. Mrs. Overton then put her hand on her shoulder and told her that, "Ray wants to know if he can do it again," and she told her to just leave her alone. Mr. and Mrs. Overton then talked together and Mrs. Overton told him that she would help to hold her. She then jumped up and ran out of the house, and went to the next house, where she called the sheriff's office, asking for a deputy sheriff who was married to a cousin of hers. She did not complain to the people next door (strangers to her) that she had been raped, but told the deputy sheriff when he came.

In his statement Ray Overton stated: The prosecutrix had been a frequent visitor in their home and had frequently slept in the same bed with them. On the date of the alleged crime he made advances to her, and she was receptive to his advances, but he became disgusted with himself before he actually had intercourse with her. As he moved over in the bed he hit his wife with his arm, and she sat up in the bed. When his wife did this, the prosecutrix got up and ran out of the room.

Mrs. Overton in her statement denied having any knowledge of what had occurred prior to the time she woke up and the prosecutrix ran out of the house.

1. The first error enumerated is that the trial judge erred in failing to give a requested charge, after

previously stating to counsel for the appellants that he would give the charge.

The requested charge is composed of several excerpts from the decision of the Court of Appeals in *Morrow v. State,* 13 Ga. App. 189, 194 (79 SE 63). It pertains to the force necessary to accomplish rape and the necessity for resistance and failure to give consent on the part of the woman. The facts in the *Morrow* case are completely dissimilar from those in the present case, and some of the language of the requested charge was not appropriate in the present case.

The record shows that at the beginning of the trial the judge stated that he would give the requested charge, but when reminded of this statement at the conclusion of his charge, he stated that he had changed his mind about giving it, because it was repetitious.

The judge charged clearly, fully, and correctly on the subject of force and consent, and it was not error to refuse to give the requested charge. No harm accrued to the appellants by the judge first agreeing to give the requested charge, and later deciding not to give it.

2. Enumerated error 2 asserts that the court erred in refusing to give a requested charge which stated that the testimony of a child must be corroborated by other testimony, cautioned the jury that such testimony should be weighed cautiously, etc.; and that the court further erred in giving no charge to the jury with respect to the testimony of a child, after stating to counsel for the appellants that he would do so.

The requested charge referred to the testimony of the prosecutrix, who was 15 years old at the time of the trial. A child over fourteen years of age is presumed to be competent to testify. *Schamroth v. State,* 84 Ga. App. 580, 583 (66 SE2d 413). There was no contention at the trial that the prosecutrix was incompetent to testify for any reason. The trial judge in his general instructions regarding the crime of rape charged the jury that her

testimony was not sufficient to warrant a conviction unless corroborated. It was not error to refuse to instruct the jury to receive her testimony cautiously because of her immaturity.

3. Enumerated error 3 alleges that the court erred in refusing to give the following requested charge: "I charge you that in such cases as this the testimony of the person alleged to have been raped should always be scrutinized with care; and where there is much in the facts and circumstances in evidence to discredit her testimony, it should be deemed insufficient to sustain a verdict of guilty."

This requested instruction is taken from the discussion of the evidence in *Simmons v. State,* 99 Ga. 699, 703 (27 SE 755). The language in the *Simmons* case was quoted with approval in *Slaughter v. State,* 181 Ga. 32, 37 (181 SE 292), in discussing the evidence in that case. It was not approved as an instruction to the jury in either case.

It is the duty of the jury to weigh the facts and circumstances which discredit the testimony of the prosecutrix, and to determine whether they will believe her in spite of these discrediting facts and circumstances. It was not error in the present case to refuse to give this requested instruction.

4. Enumerated errors 4 through 9 assert that the court erred in allowing in evidence the testimony of three female witnesses in regard to transactions not related to the crime charged, over the objection that it placed the character of the appellants in issue.

The first of these witnesses testified that on November 7 (the date of the alleged crime), at about 6 o'clock, she had a call from Mrs. Overton at the City Hall, where the witness works. Mrs. Overton asked her if she could come to her house, that she had someone she wanted her to meet. The witness told her that she did not know, that it was election day, and she did not know whether she could leave. When Mrs. Overton called at 7:00 o'clock, the

witness told her that she could not come. The next day Mrs. Overton came to the home of the witness and told the witness, "You are going to think I'm crazy," and when the witness said, "Why?" Mrs. Overton said, "Ray wants you to go to bed with him." The witness emphatically declined this proposal; Mrs. Overton pleaded with her to do it; and the witness again declined. Whereupon Mrs. Overton left.

The second witness testified: She was 17 years old. She had dated Mr. Overton and had had intimate relations with him. Sometime in the early part of November, 1972, Mr. and Mrs. Overton came after her and she went to their home. She and Mr. and Mrs. Overton went to bed, and they all three "had sex together." While she was there the prosecutrix came there and asked Mrs. Overton for her clothes.

The third witness testified that: She had been on Mr. Overton's boat a couple of times. On November 7, Mr. and Mrs. Overton came to her home and wanted her to come to their house for a social drink. She told them that she could not go because she did not have a baby sitter. They were drinking when they came.

It is the general rule of evidence that: "The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." Code § 38-202.

One exception to this rule is where the evidence is introduced "for the purpose of identifying him as the guilty party and for the purpose of showing motive, plan, scheme, bent of mind, and course of conduct." *Anderson v. State,* 222 Ga. 561 (3) (150 SE2d 638); *Gunter v. State,* 223 Ga. 290 (4) (154 SE2d 608); *McNeal v. State,* 228 Ga. 633, 637 (187 SE2d 271).

The prosecutrix in the present case related an unusual incident of a man raping her with the assistance of his

wife, and the wife's participation in the sexual act. There is no question in this case as to the identification of the alleged perpetrators of the crime, since they were well known to the prosecutrix, but the unusual nature of the crime might raise a question in the minds of the jurors as to the credibility of the prosecutrix.

The case of *Suber v. State,* 176 Ga. 525 (168 SE 585), had facts somewhat similar to the present case. Suber was indicted jointly with Hazel Murphy, and another, for rape. Testimony of two female witnesses, who testified in regard to a rape, and attempted rape, on them by Suber assisted by Miss Murphy, was admitted to show "bent of mind" of these defendants. This court affirmed the ruling that this evidence was admissible. See also *Barkley v. State,* 190 Ga. 641 (2) (10 SE2d 32).

The evidence of the solicitation by Mrs. Overton of a female companion, and a sex partner, for her husband, and the participation by one female witness in sex relations jointly with the husband and wife, at the same period of time in which the crimes here alleged were claimed to be committed, was relevant to show plan, scheme, bent of mind, and course of conduct, which would corroborate the prosecutrix. It was not error to admit this evidence.

5. Enumerated error 10 asserts that the court erred in allowing a witness for the state, Weyman Lanham, to testify as to a conversation he had with the prosecutrix on the date of the alleged rape, over the objection that it was hearsay.

When the prosecutrix left the Overton house she went to the next house and called the sheriff's office and asked that this witness come and get her. The witness received the message that a lady who was crying wanted to see him at the second house from the corner on Wildwood, and he got there in about ten minutes. He did not know who it was until he got out of the car and started walking to the house and recognized the prosecutrix. He stated:

"She ran up to me, put her arms around me and said that she had been raped." These were the first words that she said to him.

The prosecutrix made the statement to this witness approximately one hour after the alleged crime. This witness was an officer, and related by marriage to the prosecutrix. He was the first person the prosecutrix saw after the alleged crime, except for the strangers in whose home she called this officer.

In a prosecution for rape the fact that the woman made complaint soon after the assault is admissible in evidence for the purpose of rebutting the idea that she consented to the act, but the details of the complaint may not be given, unless the declarations were made so shortly after the commission of the act as to constitute a part of the res gestae. *Hooks v. State,* 215 Ga. 869 (7) (114 SE2d 6). In the present case the particulars of the complaint were not given, but under the circumstances of the case the evidence was so closely related to the event in point of time that such particulars would have been admissible. See: *Thomas v. State,* 144 Ga. 298 (4) (87 SE 8); *Conoway v. State,* 171 Ga. 782, 784 (156 SE 664); *Luke v. State,* 184 Ga. 551 (2) (192 SE 37); *Robinson v. State,* 209 Ga. 650 (3) (75 SE2d 9); *Jackson v. State,* 225 Ga. 39, 46 (165 SE2d 711).

6. The last enumerated error is that the court erred in denying the motion of counsel for the appellants for a directed verdict of acquittal.

The evidence was sufficient to authorize the verdicts, and it was not error to refuse to direct verdicts of acquittal. Compare *Brown v. State,* 138 Ga. 814 (1) (76 SE 379).

*Judgments affirmed. All the Justices concur.*