## GORE, *alias* GOINGS, *v.* THE STATE.

1. A man who has sexual intercourse with an imbecile female who is mentally incapable of expressing any intelligent assent or dissent, or of exercising any judgment in the matter, is guilty of rape, though no more force be used than is necessary to accomplish the carnal act, and though the woman offer no resistance.

2. The evidence warranted a finding that the woman with whom the intercourse was had was, by reason of mental infirmity, incapable of consenting;

and the conviction having been approved by the trial judge, a new trial will not be ordered.

Submitted January 18, — Decided February 12, 1904.

Indictment for rape. Before Judge Henry. Floyd superior court. November 16, 1903.

*M. B. Eubanks* and *C. E. Carpenter*, for plaintiff in error.

*Moses Wright, solicitor-general*, contra.

Cobb, J. "Rape is the carnal knowledge of a female forcibly and against her will." Penal Code, § 93. This is the common-law definition as given by Blackstone. 4 Bl. 210 ; 2 Bish. New Crim. L. § 1113 (2). Rape as thus defined was an offense at common law. English statutes were enacted making the offense penal, but these have been treated as simply declaratory of the common law. Various definitions of the offense have been given. A number of these are collected in an article in 13 Criminal Law Magazine, page 503, the author of which puts into the following definition the various elements of the several definitions : "Rape is the act of having carnal knowledge, by a man, of a woman, forcibly and against her will, or without her conscious permission, or where permission has been extorted by force or fear of immediate bodily harm." This is probably as comprehensive as any definition that could be given. Ordinarily penal laws are construed strictly, and, strictly speaking, it might with some force be contended that an act can not be "against the will" of a person when he or she is not in a physical or mental condition to exercise any will on the subject. See, in this connection, Croswell *v.* People, 13 Mich. 427, 437 ; Bloodworth *v.* State (Tenn.), 32 Am. R. 546. The authorities generally, however, construe the words "against her will" to be synonymous with "without her consent," and hold that the act of sexual intercourse is against the woman's will when, from any cause, she is not in a position to exercise any judgment about the matter. Thus intercourse with a woman whose will is temporarily lost from intoxication, or unconsciousness arising from the use of drugs or other cause, or sleep, etc., is rape. As stated above, there are a few cases opposed to this view, but the great weight of authority is undoubtedly in favor of giving to the statute such a construction as that just indicated. We have to consider in this case, however, only that form of inability to consent which is presumed to arise from idiocy or imbecility.

The rule of law applied by the English courts in cases where the female is alleged to have been idiotic or imbecile is the one generally followed in this country. The rule laid down by those courts is that if the female is so idiotic as to be incapable of expressing any intelligent consent or dissent, or of exercising any judgment in the matter, the offense is rape. See Queen *v.* Ryan, 2 Cox C. C. 115; Reg. *v.* Richard Fletcher, 8 Cox C. C. 131. The case of Reg. *v.* Charles Fletcher, 10 Cox C. C. 248, L. R. 1 C. C. 39, has been regarded (and it would seem with much reason) as being in conflict with the two decisions above cited, and as laying down the broad rule that in no case could a conviction be had where nothing appears but the connection and the imbecility of the female. But the English Criminal Court of Appeals has not so treated that decision. See Reg. *v.* Barrett, 12 Cox C. C. 498. In that case it was held: "Upon the trial of an indictment for rape upon an idiot girl, the proper direction to the jury is, that if they are satisfied that the girl was in such a state of idiocy as to be incapable of expressing either consent or dissent, and that the prisoner had connection with her without her consent, it is their duty to find him guilty." And it was said that "the two cases of Reg. *v.* Fletcher are not adverse to one another. The principle is properly laid down in the first case, and the second case was only a decision on the facts that there was not that requisite testimony of want of assent to justify leaving the case to the jury." See also Regina *v.* Connolly, 26 U. C. Q. B. 317, where the earlier English decisions are reviewed, and the rule is thus stated: "In the case of rape of an idiot or lunatic, the mere proof of connection will not warrant the case being left to the jury. There must be some evidence that it was without her consent, e. g., that she was incapable from imbecility of expressing assent or dissent; and if she consent from mere animal passion, it is not rape."

A comprehensive statement of the law of the subject as applied by the American courts is found in Clevenger on Medical Jurisprudence of Insanity, vol. 1, pp. 202–3. This summary of the law is merely an epitome of the decisions which are cited, and seems to us to be a very fair analysis of those decisions. We quote the following from this author: "Sexual intercourse with a woman who is so destitute of mind as to be incapable of giving consent is rape, though she does not resist. The test of mental

capacity under this rule is whether she was capable or incapable of giving consent or of exercising any judgment in the matter. And very slight proof of force is necessary where the woman lacks the intelligence to comprehend the nature and consequences of the act, and to distinguish morally and legally between right and wrong; and when the man does not suppose that he has her consent, the force required and which is involved in the carnal act is sufficient. But where the will is active, though perverted, the act is not rape, when all idea of force or unwillingness is distinctly disproved. And the mere fact that a woman is weak-minded does not disable or debar her from giving consent to the act, and intercourse with her when she is capable of exercising her will sufficiently to control her personal actions is not rape; and if there is reasonable doubt whether force was used, the jury should acquit though the woman was of weak mind. A woman with less intelligence than is requisite to make a contract may consent to sexual intercouse so that the act will not be rape upon the part of the man. And connection with a woman who is in a state of dementia, and not idiotic, but approaching toward it, having a predisposition to be with men and a morbid desire for sexual intercourse, is not rape when no circumstances of either force or fraud accompany the act; nor is intercourse without resistance with a woman subject to epileptic fits, where the evidence does not show that she was under the influence of a fit at the time. The burden of proof of insanity at the time of the act and that the carnal knowledge was obtained by force and without consent, rests with the prosecution. There must be some evidence that she was incapable, from imbecility, of expressing assent or dissent, and when consent is given from mere animal passion or instinct, it is not rape, and a conviction can not be sustained in the absence of evidence as to her general character for chastity and decency, or anything else to raise a presumption that she did not consent. Evidence of the connection and the imbecility alone is insufficient. But evidence of habits of decency raises a presumption that she would not have consented." See also the following authorities: 2 Bish. New Crim. L., §§ 1121, 1123; Clark & Mar. Crimes, § 295; 1 Whart. Crim. L. (10th ed.), § 560; 13 Crim. Law Mag. 510; 2 Russ. Crimes (6th ed.), 226; 2 Ros. Crim. Ev. (8th ed.), 1119; May's Crim. Law, § 195.

The following is the rule stated in 23 American and English Encyclopædia of Law (2d ed.), 856 : "Sexual intercourse with an insane or idiotic woman whose mind, to the knowledge of the man, is totally incapable of consenting to the act is rape, though she submits to the act without resistance, as in such a case the intercourse is without her consent and against her will. If, however, the female, though weak-minded or idiotic, consents to the intercourse from animal instincts, passion, or morbid desires, the act is not rape." See also State v. Williams, 149 Mo. 496, s. c. 51 S. W. 88 ; Payne v. State (Tex.), 49 S. W. 604 ; State v. Cunningham, 100 Mo. 383 ; State v. Atherton (Iowa), 32 Am. Rep. 134 ; McQuirk v. State, 84 Ala. 435 ; State v. Tarr, 28 Iowa, 397.

There was evidence to show that the accused was acquainted with the mental condition of the female ; and hence the sole question is, whether the present case falls within the rule declaring the act to be rape where the woman is so idiotic as to be incapable of exercising any intelligent judgment in the matter ; or whether the girl belongs to that class of unfortunate females who, while weak-minded, yet possess sufficient mental capacity to comprehend the nature and consequences of the act, and are able to bring to bear that judgment which a woman with that knowledge would exercise. We have reached the conclusion that the conviction should be upheld, and in stating the result of our deliberations we do not deem it necessary to discuss at length the evidence in the case. The most important consideration which has led us to this conclusion is the fact that the girl herself was sworn as a witness and the judge and jury had an opportunity to pass upon her mental condition by inspection as it were. There was testimony other than that of the girl, upon which the jury could base a finding that the act of sexual intercourse had taken place ; and hence the State is not in the embarrassing situation in which the prosecution found itself in a Texas case, where it had to rely upon the woman's testimony to show that the carnal act was accomplished, and at the same time contend for a conviction on the ground that the female was an imbecile and incapable of consenting. See Thompson v. State, 33 Tex. Crim. Rep. 472. Apparently the girl could answer only leading questions, generally responding to these by a simple yes or no. And even these brief answers are contradictory in important

respects. She said she consented to the act, and yet when counsel for the State explained to her what opposing counsel meant by consent, she said she did not agree for the accused to do what he did. Questions asked for the purpose of eliciting any extended information as to what took place she wholly failed to answer. She testified that she was fifteen years of age, whereas her mother said she was nineteen. She said she had been to school and could read and write, could read in the third and fourth readers. She was not, however, so far as appears, put to the test before the jury; and her father distinctly swore that she could not learn anything at all at school, and that notwithstanding she had been to several teachers, she did not even know her alphabet.

The jury saw the girl, heard her conflicting statements, and witnessed her demeanor and manner of testifying. A great deal would depend on her appearance. The jury are constituted by law the judges of all these matters. They have by their verdict solemnly affirmed that the girl's intellect was so weak that she was incapable of consenting to the act of sexual intercourse, and we do not feel disposed to usurp their functions, and at this distance, upon a printed record, without ever having seen the girl, declare that we are better judges of the girl's mental condition than the members of the jury were. The trial judge also saw the girl and heard her testimony, and he is satisfied with the verdict. The Supreme Court of Iowa, in a recent case where the accused was charged with having committed a rape on an imbecile woman, said: "Taking the testimony of the witnesses on both sides of the question, without more, we would be strongly inclined to reverse the case. But the record shows that the complainant was examined as a witness, and that her examination was quite lengthy. Her answers to questions show that she is almost an imbecile, unless she was feigning imbecility. The learned judge and the jury who tried the case saw and heard her while she was on the witness stand, and we can not put ourselves in the place of the judge and jury. Her appearance and demeanor while testifying were most important considerations in determining her mental capacity, and, under the circumstances, we think it is not proper for this court to interfere with the verdict." Inasmuch as no complaint has been made of any charge or ruling of the trial judge, it is necessarily to be presumed that the law was fully and

fairly given in charge, and that the accused was deprived of no right to which he was entitled. Women like the unfortunate girl involved in this case must be protected, not only against the animal lusts of the members of the opposite sex, but against themselves as well; and men, who, knowing of their imbecility, take advantage of their helpless condition to gratify their own lustful desires, are guilty of rape, though they use no more force than that involved in the carnal act, and though the woman offer no resistance to the consummation of their purpose. In the language of Lord Chief Justice Campbell, in Regina v. Richard Fletcher, supra, "It would be monstrous to say that these poor females are to be subjected to such violence, without the parties inflicting it being liable to be indicted. If so, every drunken woman returning from market, and happening to fall down on the road side, may be ravished at the will of the passers by."

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*