## SMITH v. THE STATE.

1. Where a defendant is charged with rape of female who is mentally incapable of expressing any intelligent assent or dissent to acts of sexual intercourse, or of exercising any judgment in the matter, and where such female testifies to acts of sexual intercourse between her and the defendant (conceding that the testimony of a female capable of consenting in a rape case must be corroborated), the only corroboration of the testimony of such imbecile female necessary is proof of facts or circumstances tending to corroborate her testimony as to the acts of sexual intercourse with the defendant. Slight circumstances may be sufficient to corroborate the woman, and the sufficiency of the corroboration is a question for the jury. Where there is proof of the birth of a child as a result of the illicit intercourse between such woman and the defendant, and of the resemblance of such child to the defendant, this may furnish sufficient corroboration of the testimony of such female as to such acts of sexual intercourse.

2. "A man who has sexual intercourse with an imbecile female, who is mentally incapable of expressing any intelligent assent or dissent, or of exercising any judgment in the matter, is guilty of rape, though no more force is used than is necessary to accomplish the carnal act, and though the woman offer no resistance."

(*a*) A female over fourteen years of age is presumed to possess sufficient mental capacity to intelligently assent to or dissent from acts of sexual intercourse; and where in a rape case the contention of the State is that a woman above that age did not possess such intelligence, the burden rests upon the State to establish this fact.

(*b*) There is evidence in the record which would authorize the jury to find that the female alleged to have been raped was an imbecile, not possessing sufficient mental capacity to intelligently assent to or to dissent from acts of sexual intercourse with the defendant, or to exercise any judgment in the matter.

3. In such a case the true test of the mental capacity of the injured female was, not whether her mental capacity was below that of a normal girl fourteen years of age, but whether she possessed the mental capacity required under the principle announced in the second headnote above.

Criminal Law 16 C. J. p. 1150, n. 93.

Rape 33 Cyc. pp. 1426, n. 81; 1453, n. 19 New; 1486, n. 12; 1492, n. 58; 1496, n. 82; 1497, n. 88 New; 1498, n. 92.

Witnesses 40 Cyc. pp. 2201, n. 60; 2518, n. 81; 2564, n. 98; 2662, n. 47,

4. While the court erred in instructing the jury upon the subject of their right to find the defendant guilty of adultery and fornication under the indictment against him for rape, if they found him not guilty of rape but of the offense of adultery and fornication, such erroneous instruction does not require the grant of a new trial, as the defendant was not found guilty of the latter offense.

5. We can not say as a matter of law that the verdict was decidedly and strongly against the weight of the evidence, and was sufficient to raise a reasonable doubt of the defendant's guilt in the minds of the jury, for the reason that the father of the injured female testified that she knew it was wrong to have sexual intercourse with the defendant; there being evidence offered by the State to the contrary. This fact was for the consideration of the jury, and might or might not induce them to believe that there was a reasonable doubt of the guilt of the defendant under the entire evidence in the case.

6. While the right of a thorough and sifting cross-examination of the witnesses called against him belongs to a defendant in a criminal case, the court properly, on the cross-examination of a witness for the State, refused to permit such witness to answer the question why he had sworn out a warrant against the defendant for adultery and fornication when he knew that the defendant was accused of rape, as such question assumed the existence of such warrant and of such knowledge on the part of the witness; especially as the trial judge stated to counsel for the defendant that he would require the witness to answer this question if the warrant was introduced, counsel for the defendant having such warrant in his possession and having exhibited the same to the witness.

7. On the trial of a defendant for rape, based upon acts of adultery with an imbecile female, and upon her mental incapacity of intelligently assenting to acts of sexual intercourse with the defendant, it can not be said, as a matter of law, that the female was mentally incompetent of testifying against the defendant as to such acts; and in° the absence of any effort of the defendant to have her mental capacity tested by the court, and of any ruling of the court thereon, we can not say that the verdict is without evidence to support it because the female was the only witness to such acts of intercourse with the defendant.

8. There is evidence to support the verdict.

No. 5118. December 17, 1925. Rehearing denied January 16, 1926.

Rape. Before Judge Perryman. Wilkes superior court. September 29, 1925.

*H. E. Combs* and *C. E. Sutton,* for plaintiff in error.

*George M. Napier, attorney-general, M. L. Felts, solicitor-general, T. R. Gress, assistant attorney-general,* and *B. W. Fortson,* contra.

Hines, J. O. S. Smith was convicted of rape upon the person of Roselle Smith. The jury recommended him to mercy, and fixed his sentence at service in the penitentiary from four to six years. He moved for a new trial upon the general grounds, and

by amendment added other grounds. The motion was overruled, and to this judgment he excepted.

1. It is insisted by the defendant that the testimony of the female alleged to have been raped by the defendant was not corroborated, and that for this reason the verdict is without evidence to support it. This insistence is based upon the theory that there was no outcry made by the female, that there was no examination of her clothes or person to determine whether they showed any sign of the commission of a rape upon her person, and that she did not report the alleged offense to the members of her family. Under the view which we take of this case, corroboration of but one fact was necessary, and that fact was whether the defendant had sexual intercourse with this woman. If she was mentally incapable of giving her consent to the acts of intercourse between her and the defendant, then these acts per se constituted rape, although they were consummated without objection on her part and not against her will. Acts of intercourse with a female mentally incapable of giving assent thereto are in law considered as done forcibly and against the will of the injured female, and constitute rape. Conceding that the testimony of a female, in a case of rape, where she is capable of consenting, must be corroborated, the only corroboration necessary in a case where the woman is an imbecile incapable of consenting is proof of facts or circumstances tending to sustain the testimony of the woman as to acts of sexual intercourse with the defendant. We think there are such facts and circumstances in the record. The defendant was a near neighbor of the family of this woman. Prior to her despoilment she was a frequent visitor at his home. It was shown that she did not visit other homes or go with other men. She became pregnant and bore a child. There is evidence that this offspring of her illicit intercourse resembles in appearance the defendant. It is a general rule of breeding that like begets like. Slight circumstances may be sufficient to corroborate the woman. The sufficiency of the corroboration and the extent of the corroboration necessary is always a question for the jury. *Powers* v. *State*, 44 *Ga.* 209 (4) ; *Rawlins* v. *State*, 124 *Ga.* 31, 34 (52 S. E. 1). So we are of the opinion that the testimony of the female as to the acts of fornication and adultery with the defendant is corroborated.

2. The female alleged to have been raped by the defendant was

27 years of age. The serious question in this case is whether she was mentally capable of intelligently assenting to, or dissenting from, acts of intercourse with the defendant. If she possessed sufficient strength of mind to intelligently assent to these acts of intercourse, then it might fairly be inferred from the evidence that she consented thereto, and that the State failed to make out a case of rape. This court on this subject has laid down the following principle: "A man who has sexual intercourse with an imbecile female who is mentally incapable of expressing any intelligent assent or dissent, or of exercising any judgment in the matter, is guilty of rape, though no more force is used than is necessary to accomplish the carnal act, and though the woman offer no resistance." *Gore* v. *State,* 119 *Ga.* 418 (46 S. E. 671, 100 Am. St. R. 182) ; *Brown* v. *State,* 138 *Ga.* 814 (76 S. E. 379). The same principle has been announced by the Court of Appeals. *Morrow* v. *State,* 13 *Ga. App.* 189 (79 S. E. 63). A female over 14 years of age is presumed to possess sufficient mental capacity to intelligently assent to or dissent from acts of sexual intercourse; and where in a rape case the contention of the State is that she did not possess such intelligence, the burden rests upon the State to establish this fact.

The injured female was sworn as a witness for the State, and gave this account of her illicit relations with the defendant: She did not know how many times she had had sexual intercourse with him, but it was many times. The first act of intercourse occurred under these circumstances: She was over at the defendant's house. He asked her to let him have intercourse with her, to which she made no reply. The defendant left before she did, and went into his field. On her way home from the defendant's house her path led through this field. He was there waiting for her. He did not say anything to her there. He just caught her, threw her down, and then had intercourse with her. She tried to keep him from it. She knocked him. She did not call for anybody or scream. She was a considerable distance from any one's house. After he got through he went back home, and she went to her home. She did not say anything to any body about this occurrence. The next day she saw him in the woods and he again had intercourse with her. He told her to do it. She thought because he told her to she ought to do it, and so she met him in the woods.

She had intercourse with him again the day after that, at the same place. She frequently met him there after that time and had intercourse with him. Sometimes she would have intercourse with him every day and some times every other day. As a result of these acts of intercourse she became pregnant and had a child born which is still living. The defendant is the father of that child. She had never had anything to do with any other man except him. The way she managed to meet him was, her people were off working in the field and she was at the house. It was about six months before she became pregnant. After she became pregnant her baby was born in the regular course. The baby will be 10 months old in September. It was born November 1, 1924. The defendant is a married man and has five children. The first time she had intercourse with him was over there in the cornfield. It was good sized corn. It was young corn and it was green. The fodder on it had not been pulled. She did not wish to bring this case into court; her brother made her come up and swear.

From this account of her relations with the defendant the jury might find that the first act of sexual commerce between her and the defendant was committed forcibly and against her will; but from her failure to make any outcry or to disclose the fact of her rape to her mother or other immediate members of her family, and from her future conduct in having subsequent acts of sexual intercourse with the defendant, the jury would be authorized to find under all the evidence that the defendant did not have carnal knowledge of this woman forcibly and against her will. Furthermore, looking to her account of the transaction alone, it could be fairly inferred that she was possessed of sufficient mental capacity to give an intelligent assent to her acts of sexual intercourse with the defendant. The jury was authorized to find, under the evidence, the following facts: When about a year and a half old this female was afflicted with a severe case of epilepsy. This condition lasted about a year and a half. During that period she had epileptic fits daily. Her spasms were hard, and she frequently had as many as 15 or 20 spasms a day. While she was cured of this malady, it left her weak-minded. She is unable mentally to do any household work. She can not sew. She plays with dolls continually. She has a box of toys with which she plays every day. When told to do a thing, she is unable to do it without be-

ing shown, like a child. She does not know how to dress herself. It is necessary for some one to dress her. She would put on her dresses with the back parts in front. She has no judgment about the selection of her clothes, and some one has to do that for her. Her conduct is that of a child. Her mother has to look after her and direct her as to keeping her person clean. She went to school for nine or ten years and was only able to learn to read and write a little. She was unable to learn her lessons. She quit school because she could not learn. She eats soup and like dishes with her fingers. In eating she makes a mess around her plate. She is feeble-minded, and far below normal. She is mentally incapable of knowing right from wrong.

There was evidence which would authorize the jury to find contrary to the facts just recited. Under these circumstances, and in view of the fact that the jury had full opportunity to observe her mental condition, we can not say as a matter of law that this unfortunate woman had sufficient mental capacity to give an intelligent assent to her acts of sexual intercourse with the defendant. In *Gore* v. *State,* supra, this court quoted with approval the following language used by the Supreme Court of Iowa, in a case where the accused was charged with having committed a rape upon an imbecile woman: "Taking the testimony of the witnesses on both sides of the question, without more, we would be strongly inclined to reverse the case. But the record shows that the complainant was examined as a witness, and that her examination was quite lengthy. Her answers to questions show that she is almost an imbecile, unless she was feigning imbecility. The learned judge and the jury who tried the case saw and heard her while she was on the witness stand, and we can not put ourselves in the place of the judge and jury. Her appearance and demeanor while testifying were most important considerations in determining her mental capacity, and, under the circumstances, we think it is not proper for this court to interfere with the verdict." The defendant had full knowledge of the feeble-mindedness of this woman. In *Gore's* case, Mr. Justice Cobb of this court well said: "Women like the unfortunate girl involved in this case must be protected, not only against the animal lusts of the members of the opposite sex, but against themselves as well; and men who, knowing of their imbecility, take advantage of their helpless condition to gratify

their own lustful desires, are guilty of rape, though they use no more force than that involved in the carnal act, and though the woman offer no resistance to the consummation of their purpose." So we are unable to declare, as a matter of law, that the verdict is contrary to law and without evidence to support it. A jury of intelligent men have pronounced the defendant guilty. The trial judge, who saw this unfortunate woman and observed her manner and demeanor, has approved the verdict. We do not think that we should disturb the same.

3. In the second ground of the amendment to his motion for new trial, the defendant quotes the first section of the act of July 31, 1918, which fixes the age at which consent to acts of sexual intercourse can be given by female children. Acts 1918, p. 259. He then sets out the testimony of the female alleged to have been assaulted, and the testimony of a physician who was sworn as a witness for the State. He then alleges "that the court ignored the fact that it was incumbent on the State to prove that the mentality of the female alleged to have been raped was below that of a normal fourteen year old girl, and . . failed to give to the jury proper instructions as to this fact, the only charge on this subject being as follows: 'I charge you, gentlemen, that if you believe the defendant Scott Smith did in Wilkes County, at any time within seven years prior to the finding and return of this bill of indictment into court, have sexual intercourse with Miss Roselle Smith, the person alleged to have been raped, and that she was not mentally capable of expressing any intelligent assent or dissent to the sexual intercourse or of exercising any judgment in the matter, and believe all that beyond a reasonable doubt, then I charge you that the defendant would be guilty of rape, though you believe that the defendant used no more force than was necessary to accomplish the carnal act and that Miss Smith offered no resistance. If you believe that the defendant did in Wilkes County, at any time within seven years prior to the finding and return of this bill of indictment, have sexual intercourse with Miss Smith, the person alleged to have been raped, and that she was mentally capable of consenting to the sexual intercourse and did consent, or that the carnal act was not done forcibly and against her will, then I charge you the defendant would not be guilty of rape. The question of the mental capacity or mental incapacity of Miss Smith,

the person alleged to have been raped, is a question entirely for you to determine under all the facts and circumstances of the case.'" Movant then sets out a substantial repetition of the above instruction. Movant then says that this charge ignored the law of Georgia and in effect instructed the jury that it was for them to find that the female alleged to have been raped was either an idiot, or of unsound mind. The defendant then alleges that "the court ignored the facts and the law that there is a middle ground to the propositions charged, and that it was for the jury to consider, whether or not the mentality of the female was below that of a normal fourteen years old girl, in which event she could not consent to the act of intercourse, even though she was willing for the act to be accomplished; and on the other hand if the jury believed that the girl was of such mental development as to be above the age of fourteen years, that she could legally consent to the acts of intercourse and it would not be rape, even though she might be feeble-minded and not of the average mentality of a twenty-seven year old woman." Movant further alleges that "it was incumbent upon the court to correctly charge the principles of law applicable to the facts, and that the court erred in giving the charge before set out, and in failing to charge the jury that the test to be applied to the female's mentality was the test of development as to age of consent, which is fourteen years." The defendant further alleges that this charge "took away from the jury the right to find that the female alleged to have been raped was above the age of fourteen years in mentality."

The court did not err in failing to instruct the jury as the defendant contends he should have instructed them; and the charge given by the court was not erroneous for any of the reasons assigned. The court correctly gave to the jury the principle of law enunciated in *Gore's* case, as applicable in a case like this.

4. In the third ground of the amendment to his motion for new trial the defendant alleges that the court erred in instructing the jury that they could find the defendant guilty of the offense of adultery and fornication, if they did not believe beyond a reasonable doubt that he was guilty of rape, and if they believed he was guilty of the lesser offense. The offense of adultery and fornication is not included in the crime of rape, and under an indictment for rape the defendant can not be convicted of the lesser

offense of fornication and adultery.   It follows that the trial judge erred in charging the jury that they could find the defendant guilty of this lesser offense, if they believed him not guilty of rape, but did believe him guilty of the lesser offense.   *Speer* v. *State,* 60 *Ga.* 381.   While this instruction was erroneous, the error was harmless, as the jury did not convict the defendant of the lesser offense; and for this reason the commission of this error does not require the grant of a new trial.   *Robinson* v. *State,* 109 *Ga.* 506 (34 S. E. 1017) ; *Davis* v. *State,* 114 *Ga.* 104, 107 (39 S. E. 906).

5.   In the fourth ground of the amendment to his motion for new trial, the defendant asserts that the verdict is decidedly and strongly against the weight of the evidence, and that the evidence introduced by the State was sufficient to raise a reasonable doubt in the minds of the jury, regardless of the evidence introduced by the defendant, because the father of the woman alleged to have been raped testified that she knew it was wrong to have intercourse with the defendant, and contradicted other facts testified to by other witnesses.   There was evidence to the contrary introduced by the State.   This conflict between the evidence, and the weight to be given the testimony of the father of this woman, were purely matters for the consideration of the jury; and we can not say that their finding is decidedly and strongly against the weight of evidence.

6.   On the cross-examination of Paul Smith, the prosecutor and a brother of this woman, who was sworn as a witness for the State, he was asked: "If you knew that he [the defendant] was accused of rape, why did you swear out a warrant for him for adultery and fornication?"   Counsel for the State objected to this question, on the ground that it was an effort to go into the contents of the warrant, and that this question could not be asked until the warrant was offered in evidence.   Counsel for the defendant had previously handed the warrant to the witness on the stand for identification, and the witness had identified his signature to the same.   The court refused to allow the witness to answer this question until the warrant was offered in evidence, which was not done.   The defendant assigns this ruling as error, because on the cross-examination his counsel had the right to test the recollection of the witness in any manner he saw fit, and because he was

not going into the contents of the warrant, but merely proving that the witness's mind had been changed concerning the offense between the time he swore out the warrant and the time he went before the grand jury and testified as a witness in the trial of the case.   Did the trial judge err in refusing to permit the witness to answer the above question?   The right of a thorough and sifting cross-examination of witnesses called against him belongs to a defendant in a criminal case.   Penal Code, § 1044.   Whenever the purpose is to impeach or discredit the witness, or to show bias, corruption, or prejudice, great latitude in cross-examination shall be allowed by the court.   *Mitchell* v. *State,* 71 *Ga.* 128 (6).   It must be borne in mind that the error alleged is not the rejection of the affidavit of the prosecutor charging the defendant with adultery and fornication with his sister, but the refusal of the court to permit this witness to answer why he sued out a warrant for the defendant for adultery and fornication with his sister when he knew the defendant was accused of her rape.   This question assumed the existence of the warrant.   For this reason, we think it was proper on the cross-examination to refuse to permit this witness to answer the above question unless the warrant was introduced in evidence.   Simonds *v.* Cash, 136 Mich. 558 (99 N. W. 754).   We are less reluctant to interfere and grant a new trial in this case on this ground, as the trial judge proposed to require the witness to answer this question if the warrant was introduced, with which counsel for the defendant failed to comply.   The introduction of the warrant would have been fair to the witness.

7.   In this case the female alleged to be an imbecile (and for this reason, as the prosecution asserts, incapable of giving her intelligent consent to acts of illicit intercourse with the defendant) was sworn as a witness for the State, and on her testimony the prosecution relies mainly for proof of her acts of sexual intercourse with the defendant.   By reason of this fact it may be said the verdict is without evidence to support it; but this contention is untenable.   The fact that a female is mentally incapable of giving her consent to acts of sexual intercourse does not, as a matter of law, render her incompetent to testify as a witness concerning the commission of such acts of sexual intercourse.   In such cases the court will, in a proper case, examine the witness to ascertain whether she is mentally capable of testifying as a witness.   State

*v.* Simes, 12 Idaho, 310 (85 Pac. 914, 9 Ann. Cas. 1216, note); 40 Cyc. 2701, B; State *v.* Crouch, 130 Iowa, 478 (107 N. W., 173). It not appearing that the defendant made any objection to the competency of this witness, or made any effort to have the court examine her and determine her capacity, we can not as a matter of law hold that she was incompetent to testify.  In *Gore* v. *State,* the imbecile female was sworn as a witness for the State.  This was the case in State *v.* Atherton, 50 Iowa, 189 (32 Am. R. 134), and State *v.* Enright, 90 Iowa, 520 (58 N. W. 901).

　8.　There is evidence to support the verdict.

<em>Judgment affirmed. All the Justices concur.</em>

RUSSELL, C. J., and GILBERT, J., concurring specially.  We concur in the affirmance of the judgment overruling the motion for a new trial, but do not wish to be understood as assenting to the proposition, either expressly or by intimation, that upon a prosecution for rape it is essential to support a conviction that the evidence of the female alleged to have been the victim must be corroborated.  The Penal Code (1910), § 1017, provides: "The testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases, such as to convict of treason or perjury, and in any case of felony where the only witness is an accomplice; in these cases (except in treason) corroborating circumstances may dispense with another witness." Rape does not fall within any of the exceptions.