CONOWAY *v.* THE STATE.

No. 7896. January 17, 1931.

*Norman Shattuck,* for plaintiff in error.

*M. Neil Andrews, solicitor-general,* and *Dean Owens,* contra.

Russell, C. J. Roy Conoway was convicted of the offense of rape, with a recommendation to mercy, and received a sentence of one to three years penal servitude. The evidence for the State was to the effect that the defendant, who was on the bank of a branch and ditch, jumped down into this gully where the complaining female had gone to break a tooth-brush from some bushes. He jerked her past a curve in the gulley, where he beat her over the head with his fists and put his hand over her mouth, telling her he would kill her if she hollered. Having thrown her down, he forcibly had connection with her, and ran a different way from the gorge. The female ran as rapidly as she could to the house where her mother and her father lived, screaming at the top of her voice. The mother ran to her, and the daughter immediately told her mother what had transpired and who was the assailant. The gully was at the bottom of a hill, and was so deep, that, while the roof of the house in which the prosecutrix lived could be seen from the point where she went to pick her tooth-brush, it was impossible for any one at the house to see even the banks of the ravine. As soon as her father returned home at night, the girl made complaint to him. He immediately swore out a warrant for the arrest of the defendant, who could not be found. He had escaped, and was not seen for four or five months. When he was finally arrested he resisted, and was captured only because he became entangled in a wire fence, and thereby the officers were enabled to overtake him.

He attempted to prove that his presence and the opportunity to commit the crime was impossible, by establishing by several witnesses four different alibis, contradictory to each other in essential details. He introduced as evidence the record of proceedings in which the girl whom it was alleged he raped had been adjudged insane, and proved that she had been confined in the State Sanitarium at Milledgeville for several months prior to the alleged .offense. However, she had been discharged from this institution and had returned home at the time the rape was said to have been committed. The defendant also put in evidence the record showing that she had . been again sent to the lunatic asylum after August 9, 1929, the day upon which the evidence shows the original warrant in this case was sworn out. The defendant though not appearing to have made any objection at the time to the incompetency of the prosecuting witness, largely relied upon the fact, both as matter of law and of fact, that the prosecutrix was insane. The defendant excepted to a judgment overruling his motion for a new trial.

■ In addition to the general grounds, the movant insists that the court erred in allowing Mrs. Nancy Smith to testify, over objection that it was hearsay, incompetent, and inadmissible, as follows: "I got out there in the back yard, and she came running to me screaming, and she said he carried her down in the ditch. She said he just catched her jumped off in the ditch. She said he hit her over the head and held his hand over her mouth to keep her from hollering." We see no error in the admission of this testimony. In the light of all the evidence, it was clearly admissible as a part of the res gestæ of the transaction. The statements made are shown by the evidence to have been so very shortly after the alleged transaction that the court could well adjudge them to be free from the suspicion of device or afterthought; and this view is strengthened in the case of a child or others of weak mind. As appears from evidence as to the condition of the prosecuting witness, the very fact that she was subject to periods of lunacy would allow the application of this rule in enabling the jury to determine for themselves whether the statements of the witness to her mother were tinctured or tainted by device and afterthought. No time limit may be fixed within which said statements are admissible and beyond which they are inad-

missible. The proximity of the statement to the alleged criminal transaction is not to be determined by mere time, but by such coherence and connection between the alleged transaction and the statement as will tend to show that in making the statement the party making it is stating truthfully, without guile, actual facts. *Lampkin* v. *State,* 87 *Ga.* 516 (13 S. E. 523) ; *Thornton* v. *State,* 107 *Ga.* 683 (33 S. E. 673). The principle that more latitude is allowed where the offended person is a child or of feeble intellect, for the reason she is not assumed to be as capable of concocting a false story as rapidly as more intelligent persons may do, is set forth in *McMath* v. *State,* 55 *Ga.* 303, and *Merritt* v. *State,* 107 *Ga.* 675 (34 S. E. 361).

■ The second special ground of the motion for a new trial complains that there was no corroboration of the female alleged to have been raped. So far as some members of this court, including the writer, are concerned, corroboration of the female alleged to have been raped is unnecessary. The progress of intelligence and civilization, and the recognition of the equality of women with men in this era, forbids that a male witness may in many offenses deprive a fellow citizen of his liberty, and even of his very life, without any legal requirement that he should be corroborated in any respect, and yet a virtuous and unmarried female may be assaulted by a brute in the form of a man inspired by lust, but the assailant can not be punished if, forsooth, the female was compelled by fear of her life to yield to his lustful embraces, for the reason perhaps that she can not comply with the dicta of Lord Hale which were expounded in a remote age when woman was considered but little more than a chattel, and presumed, unless she was corroborated, to have been willing to engage in sexual intercourse almost upon suggestion. However, in this case there was corroboration.

■ The sixth ground of the motion urges the point that the verdict is contrary to law and without evidence to support it, because it appears from the evidence that the only person testifying to the alleged crime was insane and is now insane and confined in the State Sanitarium after having been adjudged insane by the court of ordinary of Chattooga County as shown by the record.

A person may have been adjudged insane who has recovered. In such a case, as in all others, the jury could and would determine for themselves whether the witness was of sound mind. The pre-

sumption arising from the discharge would be that the witness was of sound mind, having recovered from her lunacy. It would be for the jury to say whether or not she was sane, or whether they would disregard her testimony because she was insane. Furthermore, in this case the jury saw and heard the witness through her long and tedious examination, cross-examination, several redirect examinations, and an equal number of recross examinations, and they might be satisfied by this that she was sane. They were properly instructed by the court and fully advised as to every phase of the law bearing upon the situation of a witness in the circumstances herein appearing. It seems from the testimony that both before her entrance into the asylum in 1928, and after her discharge in March, 1929, there were many times when she had lucid intervals, and, so far as witnesses could ascertain, was perfectly sane on these occasions. • It appears that since her second confinement in the sanitarium, which was after the alleged offense, and even up to the very day of the trial when she testified, she was apparently of as sound mind as an ordinary citizen. This was the testimony of the officer who brought her from Milledgeville for the purpose of testifying, as well as of others. Under these circumstances it was for the jury, and not for the judge, to find whether her competency as a witness was affected by insanity. The judge charged the jury specifically that the testimony of lunatics should not be accepted, and upon this issue the jury were obliged to find that the witness was competent before they could convict the defendant as they did. The principle that a person who has been adjudged a lunatic may yet testify, and the question as to his or her credit, and the weight of such testimony, is wholly for the jury, is recognized in this state. *Mayor &c. of Gainesville* v. *Caldwell,* 81 *Ga.* 76 (7 S. E. 99). *Formby* v. *Wood,* 19 *Ga.* 581.

■■ Upon the merits, we must say that the verdict was fully authorized by the evidence. The jury was authorized to find that the female alleged to have been assaulted was sane, and that her testimony was true. If the rules as to corroboration which were observed in ancient days are still to be strictly applied, the witness was sufficiently corroborated so as to render her credible upon that score. Under the court's instruction the jury found she was corroborated. There was no error in the instructions of the court,

or in the rulings upon the admissibility of evidence. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*