### GRENOBLE *v.* THE STATE.

No. 8073. APRIL 20, 1931.

*Leon S. Tomlinson,* for plaintiff in error.

*George M. Napier, attorney-general, W. G. Neville, solicitor-general, T. R. Gress, assistant attorney-general, C. T. Guyton,* and *H. R. Tarver Jr.,* contra.

RUSSELL, C. J.   It is our opinion that the court erred in overruling the motion of the defendant for a continuance.   As proved by the record, Dr. J. T. Girard testified: "Miss Ruth Keiffer is my patient at the State Sanitarium.   She was served with a subpœna in this trial or case.   The reason for her non-appearance on the court is that it might upset her.   She has gradually improved since entering the hospital.   She has been questioned concerning Dr. Grenoble, but has not made any accusation against him.   She has never accused Dr. Grenoble with having had any improper relations with her.   Due to her condition at this time it would probably upset her to testify as a witness in the court.   She answers some questions intelligently, and her mind is gradually returning; she understands certain things, and about some things she is rather vague, and when talked to about other things she is more or less confused.   What she has told me that she recalls I believe to be true and sane statements.   She is sane as to those things.   She remembers using the telephone one night before leaving Springfield, but denies that Grenoble was improper in his conduct toward her.   As to her general mental condition at this time, she is insane, except as stated before."   The defendant proved without objection, by the statement of his counsel in his place, that "This motion for a continuance is not made for the purpose of delay; that Miss Keiffer was expected to swear that the defendant did not rape her or in any way assault her, she having told me so while in a lucid interval at the State Hospital; that she is expected at the next term of this court; that she is not absent by permission or consent of the defendant," without being required to be sworn, upon the showing for a continuance.   It appears without contradiction that the female whom the defendant is charged to have raped has not been committed to the State Sanitarium by any judgment upon a writ de lunatico inquirendo; so there has been no judgment of a court declaring her to be insane.   On the contrary, she is merely a patient in Dr. Allen's private hospital near Milledgeville, recuperat-

ing, and, according to the testimony of the physician, is only inter-
mittently insane. From the testimony of the doctor himself it is
clear that she has lucid intervals. This court held in *Conoway* v.
*State*, 171 *Ga.* 782 (156 S. E. 664), that the testimony of a witness,
even where she has been adjudged to be insane and committed to the
State Sanitarium as provided by law, is competent testimony. It is
for the jury to determine the credibility of her testimony. In
testifying as to the sanity of Miss Keiffer, the female alleged to have
been assaulted, Dr. Girard testified that she was normal at times,
and that he had talked with her as to the rape, and that she seemed
to remember the circumstances which transpired on the night of
the alleged rape, but she denied that Dr. Grenoble "was improper
in his conduct toward her," and that she "has never accused Dr.
Grenoble with having had any improper relations with her." Con-
sidering the testimony in support of the motion for a continuance,
the gravity of the offense charged, and the great power of a mere
charge of rape upon a virtuous female in inflaming public feeling,
indignation and vindictory resentment, the presence of the female
herself was most necessary, if not essential, in the administration of
justice; and the case should have been continued or postponed, when
the only reason for her absence was the fear of her physician that
service as a witness "might upset her." The constitutional guar-
anty that one accused of crime shall be faced by the witnesses
against him might be complied with in terms, but in actuality it
would be broken and denied, if in a prosecution for rape the State,
for any reason, should decline to subpœna as a witness the person
who, above all others, should be present at the trial, and then when
the accused has summoned this witness he should be forced to
trial merely because the witness may be "upset" by reason of at-
tendance upon court and consequent examination as a witness. In
a case such as this, where the crime of rape is charged, our courts
have held the presence of the injured female as most important,
if for no other reason than that the jury may see and hear and
measure the witness in determining the question of her sanity.
It was held in *Conoway* v. *State*, supra, that if the witness has lucid
intervals, the testimony of a witness who has been judicially
declared insane is admissible if the jury be satisfied that the wit-
ness is sane at the time she testifies. In *Smith* v. *State*, 161 *Ga.*
422 (7) (131 S. E. 163), it was held: "On the trial of a defend

ant for rape, based upon acts of adultery with an imbecile female, and upon her mental incapacity of intelligently assenting to acts of sexual intercourse with the defendant, it can not be said, as a matter of law, that the female was mentally incompetent of testifying against the defendant as to such acts; and in the absence of any effort of the defendant to have her mental capacity tested by the court, and of any ruling of the court thereon, we can not say that the verdict is without evidence to support it because the female was the only witness to such acts of intercourse with the defendant." With this rule, the court held that the evidence supported a verdict of guilty. There is no reason why the rule applied in behalf of the State should not equally apply to the defendant. And so in a case where the defendant, upon his motion for a continuance, conformed to all the requirements, and it appears that from what he expected to prove by the witness alleged to have been raped, to wit, that such witness "denied Dr. Grenoble was improper in his conduct toward her," the jury would be authorized to acquit if they believed from the evidence that she was not insane at the time that she was testifying or at the time that the alleged offense was alleged to have been committed, a continuance or postponement should have been granted. "The fact that a female is mentally incapable of giving her consent to acts of sexual intercourse does not, as a matter of law, render her incompetent as a witness concerning the commission of such acts of sexual intercourse. In such case the court will, in a proper case, examine the witness to ascertain whether she is mentally capable of testifying as a witness. State v. Simes, 12 Idaho, 310 (85 Pac. 914, 9 Ann. Cas. 1216, note) ; 40 Cyc. 2701, B; State v. Crouch, 130 Iowa, 478 (107 N. W. 173)." *Smith* v. *State,* supra. It is very unusual, to say the least of it, to attempt to convict a citizen of the offense of rape without any proof from the mouth of the alleged injured female. It is not to be doubted that such a conviction may be had where the female, for any reason, is inaccessible; but a witness is not inaccessible who is within the jurisdiction of the court and merely suffering from temporary disability. That the disability may be removed, and that there is hope that the absent witness may be cured, is apparent from the showing for continuance made in this case. In addition to the cases cited, it appears that the female was sworn as a witness for the State in *Gore* v. *State,* 119 *Ga.* 418 (46 S. E. 671,

100 Am. St. R. 182) ; *Morrow* v. *State,* 13 *Ga. App.* 189 (79 S. E. 63), as well as in State *v.* Atherton, 50 Iowa, 189 (32 Am. R. 134), and State *v.* Enright, 90 Iowa, 520 (58 N. W. 901). In these cases, the fact was stressed that the jury *saw* and *heard* the female, and were thus enabled for themselves to pass upon the question of her sanity. We are of the opinion that the motion for a continuance should not have been overruled. If so, no ruling need be made upon the several other assignments of error made in this record; for the further proceedings in the trial, after the judgment overruling the motion for a continuance, were nugatory.

*Judgment reversed. All the Justices concur, except Atkinson and Hines, JJ., who dissent.*

GILBERT, J., concurring specially. I concur in the judgment of reversal. While the motion for continuance does not comply with the requirements of law, and, standing alone, would not justify a reversal of the judgment refusing a continuance, considering that motion in connection with the evidence, it seems to me that in the interest of justice the new trial should be granted. Possibly on another trial new and additional light may be shed upon the question. From every standpoint the case is most unusual, and it presents problems which are not solved and can not be solved as the record now stands.