. 27245. BONNER *v.* THE STATE.

DECIDED JANUARY 26, 1939. REHEARING DENIED MARCH 23, 1939.

*W. O. Cooper,* for plaintiff in error.

*Charles H. Garrett, Norman E. English, solicitors-general,* contra.

GUERRY, J. The defendant was convicted under an indictment charging him with the offense of assault with intent to rape. The legality of his conviction, as considered in the motion for new trial as amended, depends, in the main, upon the competency of the victim of the assault as a witness. When she was sworn as a witness for the State, the defendant moved that the court rule her incompetent, as a matter of law, to testify, on the ground that she had previously thereto, upon inquisition, been adjudged insane and a fit person for the Georgia State Sanitarium. This presented ·a preliminary question to be determined by the court. Code, § 38-1610; *Watkins* v. *State,* 19 *Ga. App.* 234 (91 S. E. 284); *Cuesta* v. *Goldsmith,* 1 *Ga. App.* 48 (57 S. E. 983); *Frasier* v. *State,* 143 *Ga.* 322 (85 S. E. 124); *Richardson* v. *State,* 141 *Ga.* 782 (82 S. E. 134); *Holden* v. *State,* 144 *Ga.* 338 (87 S. E. 27); *Langston* v. *State,* 153 *Ga.* 127 (111 S. E. 561). But see *Conoway* v. *State,* 171 *Ga.* 782 (156 S. E. 664), where the court approved the action of the trial judge in submitting the question to the jury.

The witness was examined, cross-examined, and further examined by the court. She testified substantially that about three years before September, 1936, she was addicted to the use of drugs, having acquired this habit during her confinement for several major operations following the birth of her child; that in September, 1936, she was adjudged insane and confined to the State sanitarium, and in December, 1936, was released therefrom as cured. The felonious attack was made on her in April, 1937. She was badly beaten and bruised by her assailant. She returned to the sanitarium in May, 1937, to receive treatment for injuries occasioned by this assault. She left the sanitarium after six weeks' treatment. She used no drugs from the time of her release from the sanitarium in December, 1936. It further appeared from her testimony that her grandfather was employed and lived at the sanitarium for many years, and that she lived with and had been reared by him; that she married a doctor employed at the sanitarium and was herself employed there for fourteen months as a nurse before her marriage. The inference is clearly warranted that she did not return to the sanitarium in May, 1937, purely as a mental defective, but, by reason of her familiarity with the sanitarium and the employees and the fact that she had theretofore been committed there for treatment, she voluntarily returned to received proper treatment while recovering from the effects of the felonious assault made on her in April, 1937. She further testified that her recollection of the assault was clear; that she understood the nature of an oath and that she understood that if she swore falsely she would commit, and be subject to prosecution for, the offense of perjury. The trial judge ruled her a competent witness and it is not manifest that he erred in so doing.

■ The legal conception of insanity is not identical with that of the science of medicine or metaphysics. One may be medically or metaphysically insane, yet be capable in law of making a contract, a will, or of giving competent testimony in the trial of a case. From a legal standpoint there can be no satisfactory definition of insanity, but each case must be determined from its own peculiar facts. The law adopts as its general standard, in matters of the present kind, the ability of the witness to understand the obligation of an oath and the ability to give a correct account of the matters he has seen or heard in reference to the questions at

issue. A person lacking in this is in law termed non compos mentis. The fact that a person has previously been adjudged insane upon an inquisition is by no means conclusive that she is incompetent to testify. *Lucas* v. *Parsons,* 23 *Ga.* 267 ; *Formby* v. *Wood,* 19 *Ga.* 581; *Akin* v. *Akin,* 163 *Ga.* ᷟ18 (135 S. E. 402) ; *Conoway* v. *State,* supra; *Grenoble* v. *State,* 172 *Ga.* 652 (158 S. E. 314) ; *Smith* v. *State,* 161 *Ga.* 421 (131 S. E. 163) ; *Cuesla* v. *Goldsmith,* supra; *Humphrey* v. *State,* 46 *Ga. App.* 720 (169 S. E. 53). In the present case it is inferable from the evidence that at the time she was committed to the State sanitarium her mind was merely weakened from physical degeneration resulting from the continued use of drugs, and that this was a temporary condition. Her testimony was clear, coherent, and rational. She no doubt gave the appearance of a person of sufficient intelligence to be allowed to testify on the issues presented by the indictment. She understood the nature of an oath and the legal consequences of its violation. We can not hold that the trial judge erred in holding her competent to testify.

■ The trial judge charged the jury in the terms of Code, § 38-1607, which provides that "Persons who have not the use of reason, as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, shall be incompetent witnesses." He further charged them that where a person is once adjudged to be insane, it is presumed to continue, "and the burden is upon those questioning the existence of such lunacy or insanity, to prove sanity beyond a reasonable doubt." See *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423) ; *Lawrence* v. *Boswell,* 155 *Ga.* 690 (118 S. E. 45) ; *Martin* v. *Martin,* 185 *Ga.* 349 (195 S. E. 159). And by his charge he gave them the right to find her non compos mentis and incompetent as a witness. This was more favorable to the defendant than he had the right to demand, for it seems by the weight of authority that the question of competency was one solely for the court, and that the jury might consider the evidence only for the purpose of testing the credibility of her testimony. Upon the trial her identification of the defendant as the assailant was positive and clear. She gave all the particulars of the assault and it can hardly be questioned that the jury were authorized to find that it was made with intent to rape.

■ It appears that after the defendant was taken into custody

the prosecutrix was taken to the jail and confronted with a line of prisoners, among them being the defendant. It appears that she at first identified another as her assailant, but immediately thereafter identified the defendant positively. Counsel made much of this fact in his argument before this court. He argued that the conduct of certain of the officers present at the time of the identification was such as to indicate to the prosecutrix that she should identify the defendant. Obviously, these were matters to be argued to the jury, and have no proper place in the argument before this court, for the jury and not this court is given the right to say whether her testimony at the trial, wherein she positively identified the defendant, is the real truth, taking into consideration her credibility and all other relevant facts and circumstances.

The court did not err in overruling the motion for new trial.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*