## 29656. PROPES v. THE STATE.

DECIDED NOVEMBER 27, 1942.

*LeRoy Finch, Howard, Tiller & Howard,* for plaintiff in error.
*Roy Leathers, solicitor-general,* contra.

BROYLES, C. J.   J. H. Propes was indicted for rape.   On the trial the State abandoned that charge and asked only for a conviction of the offense of an assault with intent to rape.   A verdict for the latter offense was returned; the motion for new trial was denied, and that judgment was assigned as error.

The undisputed evidence disclosed the following facts: The female in question was fourteen years and a few months old on the date of the alleged assault; she had suffered a brain injury at her birth and was deficient in her school studies, but she continued to attend school, and on the day of the alleged assault had returned from school in Atlanta and stopped at the building where her mother was employed and gotten from her the key to their house, where she lived with her mother and father.   While she was standing on the street waiting for the street-car to come by and carry her home, the defendant approached her and asked her name and where she was going.   She wrote her name and telephone number on a piece of paper and gave it to him.   She had never seen him before, and it is inferable from the evidence that he had never seen her before.   She and the defendant got on the street-car together and rode to her home.   Her father and mother were away, and nobody was in the house.   She opened the door with her key, and she and the defendant went into the house.   She testified that she lay down on the bed, and that the defendant got on top of her and attempted to have sexual intercourse with her.   Her testimony as to whether he actually had such intercourse or merely attempted to have it was vague and inconclusive, but her testimony demanded a finding by the jury that she had freely and willingly consented to such intercourse.   No other person was present in the house or

saw them while they were on the bed. However, the State contends that the evidence shows that the female, although more than fourteen years old, and although she consented to the intercourse, was an imbecile, and was mentally incapable of expressing any intelligent assent or dissent to acts of sexual intercourse; and therefore the defendant's conviction was authorized; and *Smith* v. *State*, 161 *Ga.* 421 (2) (131 S. E. 163), is cited to sustain that contention. Headnote 2 of that case reads as follows: "A man who has sexual intercourse with an imbecile female, who is mentally incapable of expressing any intelligent assent or dissent, or of exercising any judgment in the matter, is guilty of rape, though no more force is used than is necessary to accomplish the carnal act, and though the woman offer no resistance." However, in headnote 2 (a) of that decision, it is stated: "A female over fourteen years of age is presumed to possess sufficient mental capacity to intelligently assent to or dissent from acts of sexual intercourse; and where in a rape case the contention of the State is that a woman above that age did not possess such intelligence, the burden rests upon the State to establish this fact." The court further held in that case that the evidence was sufficient to authorize the jury to find that the female was an imbecile; and headnote 3 said: "In such a case the true test of the mental capacity of the injured female was, not whether her mental capacity was below that of a normal girl fourteen years of age, but whether she possessed the mental capacity required under the principle announced in the second headnote above."

In the instant case the testimony did not authorize the jury to find that the female was an imbecile or that she was mentally incapable to intelligently assent to an act of sexual intercourse. On the contrary, the evidence authorized only a finding that she was backward in her school studies, and that her mental capacity was below that of a normal fourteen-year-old girl. It is true that several of her teachers testified that in their opinions she had the mentality of a child of nine or ten years of age, but their opinions appear to have been based upon the fact of her backwardness in her school studies. Moreover, it clearly appeared from the girl's testimony, both on the direct and the cross-examinations, that she was not an imbecile, or an idiot, but merely that her mental capacity was below that of a normal girl of her age. Furthermore,

420

in the *Smith* case, supra, the record shows that Smith was a long-time neighbor of the injured female, and knew that she was an imbecile before and when he had sexual intercourse with her.

In the instant case, even if it be conceded that the girl was an imbecile, the uncontradicted evidence disclosed that she and the defendant had never seen one another before the day of the alleged assault, and there is no evidence that the defendant knew or could have known of her mental disability, the evidence being silent as to her size and appearance. We do not think that the ruling in the *Smith* case, supra, should be extended to cover the facts of this case. However, as said in that case, the burden was on the State to establish the fact that the female did not "possess sufficient mental capacity to intelligently assent to or dissent from acts of sexual intercourse;" and the State failed to carry that burden. In our opinion the verdict was unauthorized, and the overruling of the general grounds of the motion for new trial was error. This ruling being controlling in the case the special assignments of error are not considered.

*Judgment reversed. MacIntyre, J., concurs.*

GARDNER, J., dissenting. 1. This court is required, under the law, to construe the evidence most strongly in favor of the verdict. *Vandeviere* v. *State*, 58 *Ga. App.* 18 (197 S. E. 338). In the light of the evidence of the instant case and the law applicable to it, I feel compelled to dissent. The mother, the father, the teachers, and the neighbors of the child alleged to have been assaulted, testified that her mentality ranged from that of an eight to a ten-year-old child. The mother and father testified that she received an injury to her head in infancy; that she could not cope with the problems of children of her age and could not grasp group instruction; that for these reasons she had been taken from the public schools and during the last seven years she had been under private instructors. She was approximately four months over the legal age of consent—fourteen years, but she had never advanced beyond the mentality of an eight or ten-year-old child. This could be discerned by talking to her and observing her. For only about three weeks before the alleged assault had she been permitted to ride the street car alone from down-town Atlanta to her instructor's home. Either the mother or the maid would meet her upon her return and accompany her home after school hours. It is true she

knew the names of some of the street-cars, her own name and address, but she did not know the county in which she lived.

On the day of the occasion in question she obtained the key from her mother, who worked in down-town Atlanta, and started home without the maid, whereupon the accused accosted her, inquiring as to her name and residence. She wrote her name and address on a piece of paper. It is reasonable to infer that this is a very common thing for parents to first endeavor to teach their children upon their being able to go about alone, for the purpose of making the children able to identify themselves in the event they become lost. The child testified that the accused just went with her home. His version of the matter was that she enticed him to board the car with her and that they first rode a considerable distance through a residential section to her home in DeKalb County, where with the key which she had obtained from her mother, they entered the house alone and behind locked doors the alleged assault took place. According to the version of the accused, no assault took place, but he went with her as he contended because she appeared to him to be a street walker.

It is impressive to note a few remarks which the defendant let go in his statement. While there is no evidence as to the size of the girl, yet it will be observed that the defendant in his statement said: "And I looked and saw this little girl down there." Again, he made this statement: "I never touched that child. . . I call her 'child' here now because they were calling her a child." Again, after the child had given him her name and address, when the defendant was detailing the conversation had with the child at the time he met her for the first time, he made this significant statement: "And she talked very sensible to me then. Nothing like she talked here awhile ago or done anything like she did awhile ago." These admissions of the accused while making his statement convince me that he realized the jury was impressed with the imbecile appearance, conversation, and acts of the child before the jury; that he realized that her appearance and conduct were impressing the jury that she was an imbecile, and that these remarks were unwittingly thrown in by him in an effort to escape the just penalty of his depraved conduct. He attempted to convey to the jury that she was feigning imbecility.

2.   Counsel for the accused argue that the evidence for the State

showed a completed act, and therefore the verdict of assault with intent to rape was illegal. On this phase the case is controlled by *Jones* v. *State,* 68 *Ga.* 760 (4). We will not enlarge further on this contention. Counsel also argue that the court committed reversible error in that he failed to charge the law of assault and battery. This contention has been ruled adversely to the accused in *Gibson* v. *State,* 10 *Ga. App.* 117 (72 S. E. 944), and *Booker* v. *State,* 28 *Ga. App.* 118 (110 S. E. 338). This contention needs no further elaboration.

3. This brings us to consider the more difficult question. That the burden rests upon the State, where the female is over fourteen years of age, to prove her mental incapacity to assent to or dissent from acts of sexual intercourse is well settled. This is generally a jury question, to be determined from all the facts and circumstances surrounding the transaction. The contention of the State is that the female in question was an imbecile and mentally incapable of exercising any judgment in the matter. The leading opinion in this State on the subject before us will be found in *Gore* v. *State,* 119 *Ga.* 418 (46 S. E. 671, 100 Am. St. R. 182). We invite a careful consideration of this case. The first headnote reads: "A man who has sexual intercourse with an imbecile female who is mentally incapable of expressing any intelligent assent or dissent, or of exercising any judgment in the matter, is guilty of rape, though no more force be used than is necessary to accomplish the carnal act, and though the woman offer no resistance." In the body of the opinion Judge Cobb said: "We have reached the conclusion that the conviction should be upheld, and in stating the result of our deliberations we do not deem it necessary to discuss at length the evidence in the case. The most important consideration which has led us to this conclusion is the fact that the girl herself was sworn as a witness and the judge and jury had an opportunity to pass upon her mental condition by inspection as it were." On page 423 of the same case the court made this statement: "The jury saw the girl, heard her conflicting statements, and witnessed her demeanor and manner of testifying. A great deal would depend on her appearance. The jury are constituted by law the judges of all these matters. They have by their verdict solemnly affirmed that the girl's intellect was so weak that she was incapable of consenting to the act of sexual intercourse, and

we do not feel disposed to usurp their functions, and at this distance, upon a printed record, without ever having seen the girl, declare that we are better judges of the girl's mental condition than the members of the jury were. The trial judge also saw the girl and heard her testimony, and he is satisfied with the verdict." In this connection we call attention to *Smith* v. *State,* 161 *Ga.* 421, supra, particularly the fifth headnote. Compare also *Mitchell* v. *State,* 190 *Ga.* 571 (9 S. E. 2d, 892) ; *Sewell* v. *State,* 60 *Ga. App.* 606 (4 S. E. 2d, 475).

It is true that in both the *Gore* case and the *Smith* case the evidence showed that the accused was previously acquainted with the female and had actual knowledge of her mental condition, if not the extent of such condition, whereas in the case at bar the accused and the female met for the first time just before the transaction under investigation. I have carefully studied the *Gore* case and the *Smith* case and all authorities cited therein. I am convinced that our Supreme Court did not intend to lay down the rule that before one could be convicted of rape upon an imbecile female, so mentally deficient that she could not exercise intelligent judgment in the matter, he must have actual previous knowledge of such mental state of the female. To me this would seem a dangerous rule. Because such were the facts in the *Gore* case and the *Smith* case, it does not necessarily follow that such knowledge is essential in other cases of such character. Again in the *Gore* case the court said: "Women like the unfortunate girl involved in this case must be protected, not only against the animal lusts of the members of the opposite sex, but against themselves as well; and men, who, knowing of their imbecility, take advantage of their helpless condition to gratify their own lustful desires, are guilty of rape, though they use no more force than that involved in the carnal act, and though the woman offer no resistance to the consummation of their purpose." The knowledge spoken of does not depend upon previous knowledge, but it may be knowledge acquired at first sight, or conversation, or conduct, which any ordinarily reasonable person might deduce upon such meeting and conversation and observation. The female in the instant case was less than four months over the legal age of consent as prescribed in Code § 26-1303. The section does not require any previous knowledge as to the age of the female in order to constitute the offense. It does

not stand to reason that an imbecile should have less protection against "the animal lusts of the members of the opposite sex," and "against themselves as well," than a girl under fourteen years. To hold otherwise would subject imbeciles to the lusts of the most depraved rapers in those cases where the accused might be able to raise a reasonable doubt as to whether he had had any previous knowledge of the imbecility of the female. Under the entire record of the case at bar the court did not err in overruling the motion for new trial for any of the reasons assigned.